UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| Ricardo Mondragon, Eustorgio Espinobarros Feliciano, Juan Contreras, Cutberto Ortiz Hernández, Ramón Ortiz Hernández, Alejandro Jimenez Gonzalez, Renato Romero Acuña, and José Tapia, on behalf of themselves and all other similarly situated persons,<br><br>                    Plaintiffs,<br><br>v.<br><br>SCOTT FARMS, INC., ALICE H. SCOTT, LINWOOD H. SCOTT, JR., LINWOOD H. SCOTT III, DEWEY R. SCOTT, JFT HARVESTING, INC., JUAN F. TORRES, OASIS HARVESTING, INC., and RAMIRO B. TORRES<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 5:17-cv-356 |

## PRELIMINARY STATEMENT

1.      Plaintiffs Ricardo Maldonado Mondragon, Eustorgio Espinobarros Feliciano, Juan Contreras, Cutberto Ortiz Hernández, Ramón Ortiz Hernández, Alejandro Jimenez Gonzalez, Renato Romero Acuña, and Jose Tapia are farmworkers who worked and/or work performing various agricultural duties related to Scott Farms' sweet potato and tobacco operation in Lucama, North Carolina.  For many years, Defendants Scott Farms, Inc. and its officers (the "Scott Defendants") employed domestic workers to perform field and packinghouse work, using Juan F. Torres, Ramiro B. Torres, and other persons as farm labor contractors to recruit and supervise these workers.  Around the end of 2012, the Scott Defendants asked and funded Juan F. Torres and

1

Ramiro B. Torres to recruit workers from Mexico through the H-2A temporary agricultural visa program to work at Scott Farms ("the H-2A workers"), which the Torres Defendants did. Defendants did not offer Plaintiffs and their co-workers the opportunity to apply for the higher-paying H-2A positions. After the H-2A workers arrived, Plaintiffs worked closely with them, sometimes engaging in the same tasks as the H-2A workers and sometimes performing complementary work in the same fields or barns as the H-2A workers. Despite this, Defendant Scott Farms, Inc. paid and continue to pay the Plaintiffs and their co-workers less than the wage rate that H-2A workers and their domestic counterparts must be paid under the H-2A regulations, which during the time period covered by this lawsuit was the Adverse Effect Wage Rate ("AEWR"). 20 C.F.R. §§ 655.122(a) and (l). This failure to pay the AEWR and to follow the H-2A regulations was in violation of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. §§ 1801, *et seq.* and the North Carolina Wage and Hour Act (NCWHA), N.C. Gen. Stat. §§ 95-25.1, *et seq.*

2.      Plaintiffs Mondragon, Espinobarros Feliciano, Contreras, C. Ortiz Hernández, R. Ortiz Hernández, Romero Acuña, and Tapia seek to bring a class action under the AWPA, 29 U.S.C. §§ 1801, *et seq.*, for statutory or actual damages for failure to pay wages when due; violation, without justification, of the working arrangement; and providing false and misleading employment information.

3.      All Plaintiffs seek to bring a class action under the North Carolina Wage and Hour Act (NCWHA), N.C. Gen. Stat. §§ 95-25.1, *et seq.*, for back wages, liquidated damages, interest, and attorneys' fees and costs for failing to pay promised wages for their regular and overtime hours, pursuant to Rule 23(b)(3), Fed. R. Civ. P.

## JURISDICTION

4.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (interstate commerce), and 1367(a) (supplemental jurisdiction).  This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

5.     Venue over this action lies in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), As all times relevant to this action, Scott Farms, Inc. was and is a corporation organized under the laws of the State of North Carolina.  Regular and substantial business activities of all Defendants occurred in Wilson County and surrounding counties in North Carolina, at the time this action was commenced, and a substantial part of the events that gave rise to this action occurred in Wilson County, North Carolina as specified in 28 U.S.C. § 113(a).

## PARTIES

### Scott Defendants

6.     At all times relevant to this complaint, Defendant corporate entity Scott Farms, Inc. (hereinafter "Scott Farms") is and has been a corporation that is organized under the laws of the state of North Carolina, for the purpose of, among others, producing and marketing tobacco, sweet potatoes and other agricultural products within and without North Carolina.

7.     At all times relevant to this complaint, Defendant Linwood H. Scott, Jr. has been and continues to be the President, part-owner, and co-operator of Scott Farms.

8.     At all times relevant to this complaint, Defendant Alice H. Scott, has been and continues to be the Secretary of Scott Farms, and co-operator along with her spouse Linwood H. Scott, Jr., and her sons Linwood H. Scott, III and Dewey R. Scott, of Scott Farms.

3

9.      At all times relevant to this complaint, Defendants Linwood H. Scott, III and Dewey

R. Scott have been and continue to be co-operators of Scott Farms.  In that capacity, Defendant

Dewey R. Scott was and is a manager for Scott Farms, Inc. and oversees and oversaw the persons

who work in the sweet potato fields and packinghouse of Scott Farms, Inc.   Linwood H. Scott, III

was and is a manager for Scott Farms, Inc. and oversees and oversaw the persons who work in the

tobacco fields, barns and packinghouse of Scott Farms, Inc.

10.      At all times relevant to this complaint, Scott Farms and all of the Scott individual

Defendants ("Scott Defendants") were employers of Plaintiffs and the members of the proposed

AWPA and NCWHA classes within the meaning of N.C.Gen.Stat. §§ 95-25.2(3)  and (5) and 29

U.S.C. §§ 1802(2) and (5), and jointly employed them within the meaning of 29 C.F.R. §§

500.20(h)(5) and 791.2.

11.      The Scott Defendants were employers as defined by the H-2A regulations, 20 C.F.R.

§ 655.103(b), of the H-2A workers and workers in corresponding employment.  The Scott

Defendants had a place of business in the U.S., a means to be contacted for employment, the ability

to control the work of the H-2A workers and workers in corresponding employment, and had a valid

Federal Employer Identification Number.

12.      At all times relevant to this complaint, the Scott Defendants were joint employers,

together with the Torres Defendants, of the H-2A workers and the workers in corresponding

employment within the meaning of 29 C.F.R. §§ 655.103(b) and 655.1300(c).

13.      At all times relevant to this complaint, the Individual Scott Defendants were

agricultural employers within the meaning of 29 U.S.C. § 1802(2) and 29 C.F.R. § 500.20(d).

The Individual Scott Defendants owned or operated a farm and processing establishment that

4

recruits, solicits, hires, employs, furnishes, or transports migrant or seasonal agricultural workers.

14.     Defendants Linwood H. Scott, Jr., Defendant Alice H. Scott, Linwood H. Scott, III and Dewey R. Scott ("Individual Scott Defendants") all participated in the day-to-day operation of Scott Farms.  Upon information and belief, all of the Individual Scott Defendants were physically present from time to time in the fields, barns, and packing facilities owned, operated or controlled by Scott Farms, Inc. and provided verbal and non-verbal guidance and instructions to one or more of the named Plaintiffs, their supervisors, and/or the workers the Plaintiffs seek to represent in this action.

15.     At all times relevant to this Complaint, the Scott Defendants hired, supervised, disciplined and paid the named Plaintiffs and members of the proposed AWPA and NCWHA classes.

16.     Either personally and/or through their personal agents and employees, the Individual Scott Defendants all directed, controlled, and supervised the work of the Plaintiffs as part of their regular involvement in the day-to-day operations of Scott Farms.  For example, Defendant Linwood H. Scott, III directly supervises the work of Plaintiffs and the members of the NCWHA and AWPA classes that they seek to represent when they are working at the tobacco fields, barns, and warehouse.  Defendant Dewey Scott directly supervises the work of Plaintiffs and the members of the NCWHA and AWPA classes that they seek to represent when they are working at the sweet potato fields and packinghouse.

17.     Either personally and/or through their personal agents and employees, the Individual Scott Defendants all directed, controlled, and supervised the work of the H-2A workers at Scott Farms as part of their regular involvement in the day-to-day operations of Scott Farms.   For

example, Defendant Linwood H. Scott, III directs where the H-2A workers are to plant tobacco and Defendant Dewey Scott directs where the H-2A workers plant and harvest sweet potatoes. At times, Defendant Linwood H. Scott, III's assistant Steve provides instructions to the H-2A workers.

18.    The registered agent for service of process on the Defendant corporate entity Scott Farms, Inc. is Defendant Linwood H. Scott, Jr., 7965-A Simpson Road, Lucama, NC 27851.

**Torres Defendants**

19.    At all times relevant to this complaint, Juan F. Torres, JFT Harvesting, Inc., Ramiro B. Torres, and Oasis Harvesting, Inc. ("Torres Defendants") were employers of Plaintiffs and the members of the proposed AWPA and NCWHA classes within the meaning of N.C. Gen. Stat. § 95-25.2(3) and (5) and 29 U.S.C. §§ 1802(2) and (5), and jointly employed them within the meaning of 29 C.F.R. §§ 500.20(h)(5) and 791.2(a).

20.    The Torres Defendants were employers as defined by the H-2A regulations, 20 C.F.R. § 655.103(b), of the H-2A workers and workers in corresponding employment. The Torres Defendants had a place of business in the U.S., a means to be contacted for employment, the ability to control the work of the H-2A workers and workers in corresponding employment, and had a valid Federal Employer Identification Number.

21.    At all times relevant to this complaint, the Torres Defendants were joint employers, together with the Scott Defendants, of the H-2A workers and the workers engaged in corresponding employment within the meaning of 29 C.F.R. §§ 791.2, 655.103(b), and 655.1300.

22.    Defendant Juan F. Torres is the President of Defendant JFT Harvesting, Inc.

23.    During the time period covered by this lawsuit, Defendant Juan F. Torres was and is a farm labor contractor as described in 29 U.S.C. § 1802(7) and 29 C.F.R. § 500.20(j). For money

or other valuable consideration paid, he recruits, solicits, hires, employs, furnishes, or transports migrant or seasonal agricultural workers.

24.     Defendant JFT Harvesting, Inc. is a Florida corporation.

25.     Defendant Ramiro B. Torres is the President of Defendant Oasis Harvesting, Inc.

26.     During the time period covered by this lawsuit, Defendant Ramiro B. Torres was and is a farm labor contractor as described in 29 U.S.C. § 1802(7) and 29 C.F.R. § 500.20(j).  For money or other valuable consideration paid, he recruits, solicits, hires, employs, furnishes, or transports migrant or seasonal agricultural workers.

27.     Defendant Oasis Harvesting, Inc. is a Florida corporation.

28.     Either personally and/or through their personal agents and employees, Juan F. Torres and Ramiro B. Torres ("Individual Torres Defendants") all directed, controlled, and supervised the work of the H-2A workers who performed work exclusively for Scott Farms in the fields and packing house of Scott Farms.

29.     The registered agent for service of process on the Defendant corporate entity JFT Harvesting, Inc.  is Juan F. Torres, 7339 Wheat Swamp Rd., Lucama, NC  27851-9560.

30.     The registered agent for service of process on the Defendant corporate entity Oasis Harvesting, Inc. is Ramiro Torres, 7918 Simpson Rd., Lucama, NC  27851.

**Plaintiffs**

31.     At all times relevant to this Complaint, Plaintiffs and the members of the NCWHA class they seek to represent were jointly employed by Defendants within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4).

32.     At all times relevant to this Complaint, Plaintiffs Mondragon, Espinobarros Feliciano, Contreras, C. Ortiz Hernández, R. Ortiz Hernández, Romero Acuña, and Tapia and the

7

members of the AWPA class they seek to represent were and/or are seasonal agricultural workers within the meaning of 29 U.S.C. § 1802(10) and 29 C.F.R. § 500.20(r). They were or are employed in agricultural employment of a seasonal or temporary nature when employed at Scott Farms performing field work related to planting, cultivating, or harvesting operations.

**H-2A Workers**

33.      At all times relevant to this Complaint, the temporary foreign workers who traveled from Mexico to work at Scott Farms on H-2A visas ("H-2A workers") were employees of the Defendants, and were jointly employed by Defendants, within the meaning of 29 C.F.R. § 655.103(b) and 20 C.F.R. § 655.1300. Defendants control the manner and means by which the H-2A workers accomplish their work, provide the tools and equipment needed to perform the work, and determine when and how long the H-2A workers work. The work performed by the H-2A workers is part of the regular business of the Defendants, and is performed at the farming operations owned by the Scott Defendants.

34.      At all times relevant to this Complaint, the H-2A workers were jointly employed by Defendants within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4).

## FACTUAL ALLEGATIONS

**Hiring and Paying For H-2A Workers**

35.      For at least several years before the 2013 agricultural season, the Scott Defendants used crewleaders Juan Francisco Torres and Ramiro Torres and other crewleaders to hire and supervise domestic migrant and seasonal farmworkers to work in the Scott Farms fields and packinghouse. As the joint employers of those domestic field and packinghouse workers, the Scott Defendants assumed and performed the duty to keep payroll records for the work performed by those same domestic workers, to write the payroll checks for those same domestic workers, and to

8

provide housing for the domestic migrant workers who traveled from Florida and other locations to North Carolina to work for the Scott Defendants.

36.     At some point prior to the 2013 agricultural season, one or more of the Scott Defendants directed Juan Francisco Torres and Ramiro Torres to use their own corporate entities to apply for H-2A workers as H-2A labor contractors within the meaning of 20 C.F.R. § 655.1300, which they did.  For each agricultural season starting in 2013, the Torres Defendants have applied and brought in H-2A workers from Mexico to work exclusively for Scott Farms in North Carolina, starting with the growing of sweet potato seedlings in seedbeds in April or May of each year through the end of the sweet potato harvest season in November of each year.  .

37.     The Scott Defendants continued to employ Plaintiffs and the members of the proposed AWPA and NCWHA Classes after the arrival of the H-2A workers.

38.     Upon information and belief, the Scott and Torres Defendants have a close working relationship and are not completely disassociated with respect to the employment of the H-2A workers.  The Scott Defendants exercised and exercise significant control over the day to day operations of Defendants JFT Harvesting and Oasis Harvesting, and over how the H-2A workers perform their work.

39.     The Scott Defendants both represent and permit it to be represented that the Torres Defendants are agents of Scott Farms.

40.     In 2013, Defendant Scott Farms reimbursed Defendants Juan Francisco Torres and/or JFT Harvesting, Inc. for at least part of the expenses they paid in order for H-2A workers to obtain their visas and travel from Mexico to North Carolina to work.  Upon information and belief, Defendant Scott Farms made similar payments to Defendants Juan Francisco Torres and/or JFT Harvesting, Inc. in 2014, 2015, 2016, and 2017.  Upon information and belief, Defendant Scott

Farms paid Defendants Ramiro B. Torres and/or Oasis Harvesting, Inc. for at least part of the expenses they paid for H-2A workers to obtain their visas and travel from Mexico to North Carolina to work in 2013, 2014, 2015, 2016, and 2017.

41.     Defendant Scott Farms and Defendant JFT Harvesting, Inc. entered into a contract on January 13, 2013 that provided that JFT Harvesting would provide  99 workers and additional field supervisors to Scott Farms between the dates of April 7 and November 16, 2014.  Scott Farms agreed to provide housing to those 99 workers and to share the responsibility for training all harvest field workers.  Upon information and belief, Defendants Scott Farms and JFT Harvesting, Inc. entered into contracts in 2015, 2016, and 2017 in which Scott Farms agreed to provide housing to at least some of the H-2A workers and to share in the training of those workers.  Upon information and belief, Defendants Scott Farms and Oasis Harvesting, Inc. entered into contracts in 2014, 2015, 2016, and 2017 in which Scott Farms agreed to provide housing to at least some of the H-2A workers and to share in the training of those workers.

42.     Defendant Scott Farms provided Defendants JFT Harvesting and Juan Francisco Torres with training videos to show the H-2A workers in 2013 and 2014, and upon information and belief, in 2015, 2016, and 2017.  Upon information and belief, Defendant Scott Farms provided Defendants Oasis Harvesting and Ramiro B Torres D with training videos to show the H-2A workers in 2013, 2014, 2015, 2016, and 2017.

**H-2A Clearance Orders**

43.     An agricultural employer or labor contractor in the United States may import H-2A workers if the U.S. Department of Labor ("USDOL") certifies that there are not enough domestic workers to perform the job and that the employment of H-2A workers will not adversely affect the

wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and 1188(a)(1).

44.     Employers requesting H-2A workers must file a temporary labor certification application with the USDOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. §§ 655.122, 653.501, and 655.121(a)(3). The job order contains the terms to be offered to both foreign H-2A workers and U.S. workers. 20 C.F.R. § 655.122(a).

45.     Where an agricultural employer seeks foreign workers under the H-2A program, the terms of the job order establish the minimum terms and conditions for employment for all agricultural workers similarly employed. The employer must provide a copy of the work contract establishing those terms and conditions to both the H-2A workers and workers engaged in corresponding employment. 29 C.F.R. § 655.103(b).

46.     To receive H-2A workers, housing meeting the applicable housing standards must be provided at no cost to H-2A workers and those workers in corresponding employment who are not reasonably able to return to their residence within the same day. 20 C.F.R. §§ 655.122(d) and 655.1306(b)(6).

47.     An employer using H-2A workers must offer U.S. workers no less than the same benefits, wages, and working conditions that it offers to H-2A workers and must not impose any restrictions or obligations on U.S. workers that it does not impose on H-2A workers. 20 C.F.R. § 655.122(a).

48.     On January 22, 2014, Juan F. Torres submitted Agricultural and Food Processing Clearance Order ETA Form 790 ("Clearance Order"), an application to the U.S. Department of Labor Employment and Training Administration, for permission to bring in up to 99 foreign H-2A

workers from April 7 to November 16, 2014 ("January 22, 2014 Clearance Order"). USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, which listed the address of Scott Farms as the only place of employment.

49. On January 19, 2015, Juan F. Torres submitted a Clearance Order for permission to bring in up to 117 foreign H-2A workers from April 6 to November 22, 2015 ("January 19, 2015 Clearance Order"). USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, which listed the address of Scott Farms as the only place of employment.

50. On February 6, 2016 Juan F. Torres submitted a Clearance Order for permission to bring in up to 116 foreign H-2A workers from April 9 to November 25, 2016 ("February 6, 2016 Clearance Order"). USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, which listed the address of Scott Farms as the only place of employment.

51. On February 10, 2017 Juan F. Torres submitted a Clearance Order for permission to bring in up to 108 foreign H-2A workers from April 15 to November 24, 2017 ("February 10, 2017 Clearance Order"). USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, which listed the address of Scott Farms as the only place of employment.

52. On February 10, 2017 Juan F. Torres submitted a second Clearance Order for permission to bring in up to 8 foreign H-2A workers from April 15 to November 24, 2017 to work as agricultural equipment operators ("February 10, 2017 Ag Equipment Clearance Order"). USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, which listed the address of Scott Farms as the only place of employment.

53.     On March 2, 2015, Ramiro B. Torres submitted a Clearance Order for permission to bring in up to 70 foreign H-2A workers from May 11 to November 22, 2015 ("March 2, 2015 Clearance Order").   On June 9, 2015, Ramiro B. Torres submitted a second Clearance Order requesting approval to bring 67 additional H-2A workers between August 17 and November 27, 2015 ("June 9, 2015 Clearance Order").  USDOL approved both H-2A Applications for Temporary Employment Certification, Form ETA-9142A, which listed the address of Scott Farms as the only place of employment.

54.     On February 16, 2016, Ramiro B. Torres submitted a Clearance Order for permission to bring in up to 70 foreign H-2A workers from May 14 to November 25, 2016 ("February 16, 2016 Clearance Order").  On June 6, 2016, Ramiro B. Torres submitted a second Clearance Order for permission to bring in up to 74 foreign H-2A workers from August 13 to November 15, 2016 ("June 6, 2016 Clearance Order").  USDOL approved both H-2A Applications for Temporary Employment Certification, Form ETA-9142A, which listed the address of Scott Farms as the only place of employment.

55.     On January 17, 2017, Ramiro B. Torres submitted a Clearance Order for permission to bring in up to 70 foreign H-2A workers from May 13 to November 24, 2017 ("January 17, 2017 Clearance Order"). USDOL approved the H-2A Application for Temporary Employment Certification, Form ETA-9142A, which listed the address of Scott Farms as the only place of employment.

56.     Each of the Clearance Orders filed by the Torres Defendants provided a job description and wage rates for each crop activity.  Crop activities for the January 22, 2014, January 19, 2015 and the 2016 and 2017 Clearance Orders (excluding the February 10, 2017 Ag Equipment Clearance Order) included: "Sweet potato, cut plants/transplant," "Flue-cured tobacco, transplant,

13

top/sucker," "Load/unload tobacco/sweet potato," "Pull weeds/chop," or "Pull weeds/grass," and "Sweet potato, hand-harvest." Crop activities for all the Clearance Orders except the February 10, 2017 Ag Equipment Clearance Order included hand harvest of sweet potatoes and topping/suckering flue-cured tobacco, and the job description and requirements specified "[l]oad and unload sweet potato and flue-cured tobacco" as one of the tasks in the job description and requirements section. Crop activities for the February 10, 2017 Ag Equipment Clearance Order are "transplant, cultivate, plow," "pull weeds/chop," and "sweet potatoes, tobacco, corn, soybeans." The job description and requirements in that Clearance Order included operating tractors, towed machines, and forklifts, driving farm trucks and farm trailers, and repairing equipment.

57.     In an attachment to the ETA 790, each of the 2014, 2015, 2016, and 2017 Clearance Orders except the February 10, 2017 Ag Equipment Clearance Order explained that the sweet potato and tobacco work could include riding a mechanical transplanter and walking behind the transplanter to reset missing plants, stating, "Workers may be required to ride mechanical harvester" or "may ride mechanical transplanter and mechanical harvester." The 2015, 2016, and 2017 Clearance Order, except the February 10, 2017 Ag Equipment Clearance Order, specified that "[w]orkers may assist in removing tobacco from barn, placing on sheets to be bound and loaded on trucks." The 2014 and 2015 Clearance Orders also stated that "Daily individual work assignments, crew assignments, and location of work will be made by and at the sole discretion of the farm manager and/or farm supervisor as the needs of the farming operation dictate." The 2016 and 2017 Clearance Orders specified that these decisions would be made at the discretion of the employer and/or the worker's supervisor.

58.     The 2014 Clearance Order listed the hourly wage the H-2A workers would receive as $9.87 per hour or $.45 per bucket of sweet potatoes harvested, whichever was higher. The 2015

Clearance Orders listed the hourly wage the H-2A workers would receive as $10.32 per hour or $.45 per bucket of sweet potatoes harvested, whichever was higher. The 2016 Clearance Orders listed the hourly wage the H-2A workers would receive as $10.72 per hour or $.50 per bucket of sweet potatoes harvested, whichever was higher. . The 2017 Clearance Orders listed the hourly wage the H-2A workers would receive as $11.27 per hour or $.50 per bucket of sweet potatoes harvested, whichever was higher.

59.     All the Clearance Orders listed Scott Farms as the only site at which the H-2A workers would perform work in North Carolina. In the section of the Clearance Orders describing how job applicants can apply for the available positions, all the Clearance Orders provide the fax number for Scott Farms, Inc.

**Joint Employment**

60.     Prior to and after Defendants Juan F. Torres and JFT Harvesting, Inc. began bringing in H-2A workers for Defendant Scott Farms, Inc., Defendant Scott Farms paid Defendant JFT Harvesting, Inc. an hourly or piece rate based on the number of hours worked or pieces picked by the members of their crews.

61.     Upon information and belief, prior to and after Defendants Ramiro B. Torres and Oasis Harvesting, Inc. began to bring in H-2A workers for Defendant Scott Farms, Inc., Defendant Scott Farms paid Defendant Oasis Harvesting, Inc., an hourly or piece rate based on the number of hours worked or pieces picked by the members of their crews.

62.     Upon information and belief, at all times relevant to this Complaint, the Torres Defendants did not and do not have sufficient monetary resources on deposit in any financial institution to pay the wages owed for any one workweek's wages that are payable to the H-2A

15

workers they furnished to the Scott Defendants until such time as Defendant Scott Farms has paid the Torres Defendants for that workweek's work.

63.     The H-2A workers perform planting, harvesting, packing, and equipment operating work that is integral to the Scott Defendants' agricultural operation, and the Scott Defendants previously directly employed workers to do this work.  Upon information and belief, all of the H-2A workers' work, as well as the work of the named Plaintiffs and the members of the proposed NCWHA and AWPA classes, is performed on premises owned or controlled by one or more of the Scott Defendants.

64.     Upon information and belief, Scott Defendants and Torres Defendants have an arrangement between themselves to share the services of their employees, and do interchange employees to perform various tasks.

65.     Since at least 2014, Defendant Dewey Scott has assigned the H-2A workers to particular sweet potato fields and oversees all sweet potato field work.  Defendant Dewey Scott also assigns the Plaintiffs and the members of the proposed AWPA and NCWHA classes to particular sweet potato fields and oversees their sweet potato field work.

66.     Upon information and belief, since at least 2014, Defendant Linwood Scott, III has assigned the H-2A workers to particular tobacco fields and oversees all tobacco field work. Defendant Linwood Scott, III also assigns the Plaintiffs and the members of the proposed AWPA and NCWHA classes to particular tobacco fields and oversees their tobacco field work.

67.     Upon information and belief, the Scott Defendants decide on the start and stop times for the H-2A workers' work, and decide which days the H-2A workers will work.  The Scott Defendants also decide on the start and stop times for the Plaintiffs and the members of the proposed AWPA and NCWHA classes, and decide which days they will work.

68.     Upon information and belief, Defendants Dewey Scott and Linwood Scott, III give instructions to the Torres Defendants regarding the methods and techniques the H-2A workers were to use in planting, harvesting, and packing the crops.

69.     Defendant Scott Farms provides the sweet potato bins and tractors used by the H-2A workers and the Plaintiffs and members of the proposed AWPA and NCWHA classes.

70.     Defendant Scott Farms, Inc. owns at least some of the labor camps in which the H-2A workers have been housed during the time period relevant to this lawsuit, fulfilling a necessary requirement for the Torres Defendants to be able to receive H-2A workers.  In 2017, Defendant Alice Scott, on behalf of Defendant Scott Farms, registered six migrant camps with the NC Department of Labor, for occupancy by 279 H-2A workers.   Upon information and belief, one or more of the Scott Defendant registered with the NC Department of Labor migrant camps for occupancy by H-2A workers in 2014, 2015, and 2016.  Upon information and belief, Defendant Scott Farms, Inc. also provided and provides repairs and maintenance for these labor camps and does not request reimbursement from the Torres Defendants for the housing, or the repairs and maintenance.

71.     Upon information and belief, all of the sweet potato and tobacco fields, the tobacco barns, greenhouses, and packinghouses where the H-2A workers, the Plaintiffs, and the members of the proposed AWPA and NCWHA classes worked during the time period relevant to the lawsuit are owned by Defendant Scott Farms, Inc. and/or the Individual Scott Defendants.

72.     Upon information and belief, all of the tractors, transplanters, forklifts, and other farm machinery used by H-2A workers, the Plaintiffs, and members of the proposed AWPA and NCWHA classes working at Scott Farms are owned by Scott Farms.

17

73.     At various times during the time period relevant to this Complaint, the H-2A workers have performed work in the Scott sweet potato packinghouses, including packing sweet potatoes and operating forklifts, while Plaintiffs Espinobarros, Romero Acuña, and members of the proposed NCWHA and AWPA classes were performing the same work.

74.     One or more members of the proposed NCWHA and AWPA classes worked keeping track of the number of buckets picked by H-2A workers in the fields at various times during the time period relevant to this lawsuit.

75.     Planting, harvesting, and packing sweet potatoes and tobacco was and is an integral part of the Scott Defendants' business of growing, marketing, and selling sweet potatoes and tobacco.

Plaintiff Ricardo Mondragon

76.     Plaintiff Ricardo Mondragon began working for the Scott Defendants in approximately 2011.  He left his employment at some point, and returned in 2014.  In 2014, his job duties at first were to load tobacco onto a trailer and drive it to the Scott Farms barn, where it was unloaded.  Later he was put to work taking the cooked tobacco out of the barns and making bales.

77.     Plaintiff Mondragon was not recruited by Defendants for work under the H-2A clearance orders in 2014, 2015, 2016, or 2017.

78.     Plaintiff Mondragon performed the driving and unloading work alongside the H-2A workers.  After the tobacco was unloaded from the truck that Plaintiff Mondragon drove to the tobacco barns, the H-2A workers moved the boxes of tobacco into the barn.  Plaintiff Mondragon worked alongside multiple H-2A workers who were performing the same tasks when he removed

18

cooked tobacco from the barns and made it into bales. At least one other non-H-2A worker also worked in the tobacco barns with the H-2A workers when Plaintiff Mondragon worked there.

79. When Plaintiff Mondragon worked baling tobacco, he and the H-2A workers were supervised by a Scott Farms employee named, upon information and belief, Eustacio Vence. Eustacio Vence's supervisor was Defendant Linwood Scott, III.

80. Plaintiff Mondragon was paid $9.00 per hour when he was hired in 2014. When he moved from driving to baling tobacco, his hourly wage dropped to $7.50 per hour. Plaintiff Mondragon was paid less than the AEWR during each season that he worked in corresponding employment for Defendants.

<u>Plaintiff Eustorgio Espinobarros Feliciano</u>

81. Plaintiff Espinobarros began working for the Scott Defendants in approximately 2007 and is still employed there. His job duties include driving tobacco plants to the field, and operating a forklift at the tobacco barns.

82. Plaintiff Espinobarros was not recruited by Defendants for work under the H-2A clearance orders in 2014, 2015, 2016, or 2017.

83. Plaintiff Espinobarros performed his duties alongside the H-2A workers in 2014, 2015, and 2016, and continues to do so. The H-2A workers plant the tobacco plants that Plaintiff Espinobarros drives to the field. After Plaintiff Espinobarros brings the tobacco from the fields to the barns, the H-2A workers put the green tobacco from the conveyor belt into boxes to be cooked. After it is cooked, H-2A workers take it out of the barn and pass the empty boxes to Plaintiff Espinobarros to remove with the forklift. At the sweet potato packinghouse, in past years, he worked unloading potatoes using a forklift from trucks driven by H-2A workers.

19

84.     Defendant Linwood Scott, III and a Scott Farms supervisor named Steve supervise Plaintiff Espinobarros and the H-2A workers in the barn.  Defendant Linwood Scott III, among other things, directs the workers from which barn they should remove the cooked tobacco.

85.     Plaintiff Espinobarros was initially paid $7.50 per hour, and later received an increase to $8.00 per hour in 2016.  Currently he is earning $9.00 per hour on some days, and $11.27 per hour on other days.  Plaintiff Espinobarros was paid less than the AEWR during each season that he worked in corresponding employment for Defendants until sometime in 2017.

Juan Contreras

86.     Plaintiff Juan Contreras began working for the Scott Defendants in approximately 2011 and left in 2016.  His job duties included driving tobacco plants to the field, driving cut tobacco to the barn, and making bales of tobacco.

87.     Plaintiff Contreras was not recruited by Defendants for work under the H-2A clearance orders in 2014, 2015, or 2016.

88.     Plaintiff Contraras performed his duties alongside the H-2A workers in 2014, 2015, and 2016.  When Plaintiff Contreras worked at the tobacco barns making bales, he was doing the same work as the H-2A workers alongside him.  At times, H-2A workers worked in the tobacco  , where Plaintiff Contreras gathered tobacco plants to take to the field for other H-2A workers to plant.  Plaintiff Contreras and the H-2A workers also both performed the task of cleaning out the tobacco plant containers.  Defendant Linwood Scott, III supervises Plaintiff Contreras and the H-2A workers in the barn.

89.     Plaintiff Contreras was paid $7.75 per hour in 2016.  Plaintiff Contreras was paid less than the AEWR during each season that he worked in corresponding employment for Defendants.

Cutberto Ortiz Hernández

90.     Plaintiff Cutberto Ortiz Hernández began working for the Scott Defendants in approximately 2006.  His job duties include working in the greenhouse and tobacco fields, and driving a forklift at the tobacco barns.

91.     Plaintiff C. Ortiz Hernández was not recruited by Defendants for work under the H-2A clearance orders in 2014, 2015, 2016, or 2017.

92.     Plaintiff C. Ortiz Hernández performed his duties alongside the H-2A workers in 2014, 2015, 2016, and 2017, and continues to do so.  He drives a forklift carrying boxes of tobacco that the H-2A workers place to be cooked.  After it is cooked, H-2A workers take it out of the barn and pass the empty boxes to Plaintiff C. Ortiz Hernández  to remove with the forklift.     Plaintiff C. Ortinz Hernández also works alongside H-2A workers in the tobacco fields, where he gathers tobacco leaves to put in a trailer while the H-2A workers cut the tobacco flowers.

93.     Plaintiff C. Ortiz Hernández was paid $8.00 an hour in 2016.  In 2017, his pay was increased to $9.00 per hour.  Currently, he is earning $9.00 per hour some days, and $11.27 on some days.   Plaintiff C. Ortiz Hernández was paid less than the AEWR during each season that he worked in corresponding employment for Defendants until sometime in 2017.

Plaintiff Ramón Ortiz Hernández

94.     Plaintiff R. Ortiz Hernández began working for the Scott Defendants in approximately 2006 and left in approximately March of 2016.  His job duties included driving a tractor in the sweet potato and tobacco fields, working in the greenhouse, and caring for machinery in the shop.

95.     Plaintiff R. Ortiz Hernández was not recruited by Defendants for work under the H-2A clearance orders in 2014, 2015, 2016, or 2017.

21

96.     Plaintiff R. Ortiz Hernández performed his duties alongside the H-2A workers in 2014, 2015 and 2016. Sixteen H-2A workers rode on the planter driven by Plaintiff R. Ortiz Hernández in the sweet potato fields, planting sweet potatoes, while additional H-2A workers walked behind the planter to replant. H-2A workers harvested the sweet potatoes that were dug up by the tractor driven by Plaintiff R. Ortiz Hernández during harvest season. Plaintiff R. Ortiz Hernández harvested the tobacco that was sent to the tobacco barns to be cooked and baled by H-2A workers. In the greenhouse, Plaintiff R. Ortiz Hernández planted sweet potato plants that were cut and planted by H-2A workers. H-2A workers drove the boxes of sweet potatoes from the field to the packinghouse, and Plaintiff R. Ortiz Hernández repaired boxes that were damaged.

97.     Plaintiff R. Ortiz Hernández was paid $8.00 per hour in 2014, and later received an increase to $8.50 per hour, which he was earning when he left his employment with Scott Farms in March 2016. Plaintiff R. Ortiz Hernández was paid less than the AEWR during each season that he worked in corresponding employment for Defendants.

<u>Plaintiff Alejandro Jimenez Gonzalez</u>

98.     Plaintiff Jimenez Gonzalez began working for the Scott Defendants in approximately 2010 and is still employed there. His job duties include driving a tractor in the tobacco and sweet potato fields.

99.     Plaintiff Jimenez Gonzalez was not recruited by Defendants for work under the H-2A clearance orders in 2014, 2015, 2016, or 2017.

100.    Plaintiff Jimenez Gonzalez performed his duties alongside the H-2A workers in 2014, 2015, 2016, and continues to do so. While the tobacco harvesting is typically mechanized, when the fields are wet the H-2A workers pick the tobacco in the fields while Plaintiff Jimenez

Gonzalez drives a tractor. He has also driven a tractor in the sweet potato fields while the H-2A workers are picking.

101. Plaintiff Jimenez Gonzalez was paid $9.00 per hour in 2016. Currently he is earning $10.00 per hour on some days, and $11.27 per hour on other days. Plaintiff Jimenez Gonzalez was paid less than the AEWR during each season that he worked in corresponding employment for Defendants until sometime in 2017.

102. Plaintiff Gonzalez was paid less than the AEWR during each season that he worked in corresponding employment for Defendants.

Renato Romero Acuña

103. Plaintiff Renato Romero Acuña began working for the Scott Defendants in approximately 2006 and is still employed there. His job duties include spraying herbicides in the sweet potato and tobacco fields where the H-2A workers plant the crops, digging up sweet potatoes with a tractor while the H-2A workers harvest, and driving a forklift.

104. On occasion during the time period relevant to the Complaint, Plaintiff Romero Acuña worked packing sweet potatoes alongside H-2A workers.

105. Plaintiff Romero Acuña was not recruited by Defendants for work under the H-2A clearance orders in 2014, 2015, 2016, or 2017.

106. Plaintiff Romero Acuña was paid $8.00 per hour in 2016. Currently he is earning $9.25 per hour on some days, and $11.27 per hour on other days. Plaintiff Romero Acuña was paid less than the AEWR during each season that he worked in corresponding employment for Defendants until sometime in 2017.

<u>Plaintiff José Tapia</u>

107.     Plaintiff Tapia began working for the Scott Defendants approximately nine years ago, and is still employed there.  His job is to work in the tobacco fields and the tobacco warehouse.

108.     Plaintiff Tapia was not recruited by Defendants for work under the H-2A clearance orders in 2014, 2015, 2016, or 2017.

109.     Plaintiff Tapia performed his duties alongside the H-2A workers in 2014, 2015 and 2016, and continues to do so.  The H-2A workers plant the tobacco plants that Plaintiff Tapia drives to the field.  When Plaintiff Tapia works at the tobacco warehouse, he works alongside H-2A workers who are doing the same work with the tobacco press, tying up bales of tobacco.

110.     Plaintiff Tapia was paid $9.00 per hour in 2016.  Currently he is earning $11.27 per hour for some of the hours he works.  Plaintiff Tapia was paid less than the AEWR during each season that he worked in corresponding employment for Defendants until sometime in 2017.

**Recruitment**

111.     Under the H-2A regulations, H-2A employers are obligated to engage in recruitment of domestic workers by accepting referrals and conducting positive recruitment activities, including making contact with former employees, until the date the H-2A workers depart for the employer's place of work.  20 C.F.R. §§ 655.135(c); 655.150-154; 655.158.

112.     H-2A employers are required to hire any qualified domestic worker who applied for H-2A work through the first half of the contract period.  20 C.F.R. §§ 655.135(a) & (d).

113.     Defendants did not contact Plaintiffs or members of the AWPA Class to recruit them for work under any H-2A Clearance Order, did not inform them of the jobs available under the H-

2A Clearance Orders at the AEWR wage rate, and did not hire any of the Plaintiffs or members of the AWPA Class under any H-2A Clearance Order during the time period relevant to this lawsuit.

**AEWR**

114.    In 2014, 2015, 2016, and 2017, Plaintiffs and members of the proposed NCWHA and AWPA classes engaged in employment specifically listed on the H-2A Clearance Orders, during the time periods covered by the orders.  This work included loading and unloading tobacco, transplanting and resetting plants, harvesting tobacco and sweet potatoes, removing tobacco from the barn, packing tobacco into bales, operating tractors and forklifts, driving farm trucks and farm trailers, and repairing farm equipment.

115.    In 2014, 2015, 2016, and 2017, Plaintiffs Espinobarros, Romero Acuña, R. Ortiz Hernández, and members of the proposed NCWHA and AWPA classes engaged in tasks that were also performed by H-2A workers despite not being listed on the H-2A Clearance Orders, including working in the greenhouse and packing sweet potatoes and performing related tasks at the sweet potato packinghouse.

116.    Defendants were required to provide a copy of the terms of the work contract or Clearance Order to any worker who performed qualifying H-2A work during the contract period. 20 C.F.R. §§ 655.122(q); 655.103(b).  Defendants did not provide this to Plaintiffs or to members of the proposed NCWHA and AWPA classes.

117.    Defendants failed to pay Plaintiffs and members of the proposed NCWHA and AWPA classes their wages when due at the AEWR wage rate during most, if not all, workweeks covered by the lawsuit.

**Farm Labor Contractor Issues**

118.    Defendant JFT Harvesting, Inc.'s farm labor contractor license expired on April 30, 2017.  Upon information and belief, at the time this Complaint was filed, Defendant JFT Harvesting, Inc. did not have authorization from USDOL to act as a farm labor contractor.

119.    Upon information and belief, Defendant Ramiro Torres does not currently have authorization from USDOL to act as a farm labor contractor.

**Working Arrangement**

120.    The working arrangement between Defendants and Plaintiffs and members of the proposed AWPA Class incorporated the express terms laid out in the job orders prepared for the Torres Defendants within the meaning of 29 U.S.C. § 1832(c) and 29 C.F.R. § 500.72.

121.    Defendants failed to comply with the working arrangement when they did not pay the Plaintiffs the required AEWR wage rate when they were engaged in corresponding employment with Defendants' H-2A workers.

## AWPA CLASS ALLEGATIONS

122.    Paragraphs 1 through 121 are realleged and incorporated herein by reference.

123.    Plaintiffs Ricardo Mondragon, Eustorgio Espinobarros Feliciano, Juan Contreras, Cutberto Ortiz Hernández, Ramón Ortiz Herndandez, Renato Romero Acuña, and José Tapia seek to represent a class consisting of all non-H-2A migrant and seasonal agricultural workers who were employed by one of more of the Defendants to work at Scott Farms in corresponding employment during the three years prior to the date of this Complaint and continuing until the date final judgment is entered.

124.    The class is so numerous and so geographically dispersed as to make joinder impractical.

125.     There are questions of law and fact common to the class.  These are, among others: (a) whether Defendants provided false and misleading information to members of the AWPA Class about the availability of H-2A positions and/or the compensation owed to class members who performed work listed in the Clearance Orders; (b) whether Defendants failed to comply with the working arrangement when they paid members of the AWPA Class less than the AEWR for work performed in corresponding employment during the time covered by the Clearance Orders; and (c) whether Defendants failed to pay members of the AWPA Class wages when due when they paid them less than the AEWR for work performed in corresponding employment during the time covered by the Clearance Order; (d) whether the Scott Defendants took reasonable steps to determine whether the JFT Harvesting, Inc. and Ramiro Torres possessed a valid farm labor contractor registration certificate; (f) whether JFT Harvesting, Inc. and Ramiro Torres possessed a farm labor contractor registration certificate in full force and effect for all time periods covered by the complaint.

126.     Joinder of all class members for the proposed AWPA Class would be impracticable, if not impossible, based in part upon the fact that some of the proposed class are migrant and most do not speak English.  Upon information and belief, the number of individuals in the proposed AWPA Class would exceed 40 people.

127.     The claims of Plaintiffs Ricardo Mondragon, Eustorgio Espinobarros Feliciano, Juan Contreras, Cutberto Ortiz Hernández, Ramón Ortiz Hernández, Renato Romero Acuña, and José Tapia are typical of the claims of the AWPA Class of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that the named Plaintiffs claim Defendants did not inform them of the availability of jobs at the AEWR wage rate, that they performed tasks covered by the Clearance

Orders during the time period covered by the Clearance Orders, and that Defendants failed to pay them the AEWR for each work week during the time period covered by the Clearance Orders.

128.    The interests of Plaintiffs Ricardo Mondragon, Eustorgio Espinobarros Feliciano, Juan Contreras, Cutberto Ortiz Hernández, Ramón Ortiz Herndandez, Renato Romero Acuña, and José Tapia in the claims are in no way antagonistic or adverse to those of other AWPA Class members.

129.    Plaintiffs Ricardo Mondragon, Eustorgio Espinobarros Feliciano, Juan Contreras, Cutberto Ortiz Hernández, Ramón Ortiz Herndandez, Renato Romero Acuña, and José Tapia will fairly and adequately represent the interests of the NCWHA Class.

130.    The undersigned counsel Carol Brooke and Robert J. Willis are experienced litigators who have been named counsel for many class actions involving similar claims to those raised in this action.

## NCWHA CLASS ALLEGATIONS

131.    Paragraphs 1 through 130 are realleged and incorporated herein by reference.

132.    Plaintiffs seek to represent a class of persons under Rule 23(b)(3), Fed. R. Civ. P., for back wages and liquidated damages under N.C. Gen. Stat. §§ 95-25.6, 95-25.22, and 95-25.22(a1) ("NCWHA Class") against Defendants.  The NCWHA Class consists of all non-H-2A farmworkers who were employed by one or more of the Defendants to perform work at Scott Farms in corresponding employment during the two years prior to the filing of this Complaint, and continuing until the date final judgment is entered. The NCWHA violations occurred when Defendant failed to pay Plaintiffs and members of the NCWHA Class at the AEWR rate during each workweek in which they performed work for the Defendants during the time period covered by the Clearance Orders, in violation of N.C. Gen. Stat. § 95-25.6.

133. Joinder of all class members for the proposed NCWHA Class would be impracticable, if not impossible, based in part upon the fact that some of the proposed class are migrant and most do not speak English. Upon information and belief, the number of individuals in the proposed NCWHA Class would exceed 40 people.

134. The questions of law or fact which are common to the members of the NCWHA Promised Wage Class and which predominate over any other questions affecting only individual members of the class under Rules 23(a)(2) and 23(b)(3), Fed.R.Civ.P., are: (a) whether the Scott Defendants and the Torres Defendants were joint employers of the H-2A workers, Plaintiffs, and members of the NCWHA Class; (b) whether members of the NCWHA Class performed tasks listed on the Clearance Orders during the time periods covered by the Clearance Orders; (c) whether the members of the NCWHA Class performed tasks that were performed by the H-2A workers, whether or not they were listed on the Clearance Orders; and (d) whether Defendants failed to pay the members of the NCWHA Class at the promised rate for their hours worked during the time period covered by the Clearance Orders.

135. The claims of Plaintiffs are typical of the claims of the NCWHA Class of persons under Rules 23(a)(3) and 23(b)(3), Fed.R.Civ.P, in that the named Plaintiffs claim they performed tasks covered by the Clearance Orders or performed by the H-2A workers during the time period covered by the Clearance Orders and that Defendants failed to pay them the AEWR for each workweek during the time period covered by the Clearance Orders.

136. Plaintiffs' interests in the claims are in no way antagonistic or adverse to those of other NCWHA Class members.

137. Plaintiffs will fairly and adequately represent the interests of the NCWHA Class.

138.     The undersigned counsel Carol Brooke, Clermont Ripley, and Robert J. Willis are experienced litigators who have been named counsel for many class actions involving similar claims to those raised in this action.

## FIRST CLAIM FOR RELIEF: AWPA (Plaintiffs Mondragon, Espinobarros Feliciano, Contreras, C. Ortiz Hernández, R. Ortiz Hernández, Romero Acuña, and Tapia)

139.     Paragraphs 1 through 138 above are realleged and incorporated herein by reference. During each agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing, on information and belief, through the date that final judgment is entered in this action, Defendants intentionally violated the AWPA and its implementing regulations in the following ways:

a)  Defendants failed to pay weekly wages to Plaintiffs Mondragon, Espinobarros Feliciano, Contreras, C. Ortiz Hernández, R. Ortiz Hernández, Romero Acuña, and Tapia and the members of the AWPA class that were due when they were due for all hours worked when they failed to pay the AEWR rate for all compensable hours worked, in violation of 29 U.S.C. § 1832(a).

b)  Defendants violated, without justification, the working arrangement that they had with named Plaintiffs Mondragon, Espinobarros Feliciano, Contreras, C. Ortiz Hernández, R. Ortiz Hernández, Romero Acuña, and Tapia and each member of the AWPA class to pay the specific hourly rate disclosed in the Clearance Orders for work performed pursuant to those Clearance Orders, in violation of 29 U.S.C. § 1832(c).

c)  Defendants knowingly provided false or misleading information to named Plaintiffs Mondragon, Espinobarros Feliciano, Contreras, C. Ortiz Hernández, R. Ortiz Hernández, Romero Acuña, and Tapia and the members of the AWPA class that the Scott Defendants were not obligated to pay wages to those same workers at the

AEWR rate when Defendants knew that the Plaintiffs and members of the AWPA class were engaged in corresponding employment for which the AEWR was owed.

d) Defendants JFT Harvesting, Inc. and Ramiro B. Torres violated the farm labor contractor registration requirements of the AWPA when they failed to maintain a registration certificate in full force and effect during the entire time period relevant to this Complaint, in violation of 29 U.S.C. § 1811 and 29 C.F.R. § 500.40.

e) The Scott Defendants violated the farm labor contractor registration requirements of the AWPA when they used Defendants JFT Harvesting, Inc. and Ramiro B. Torres to perform farm labor contracting activities when they did not maintain a registration certificate in full force and effect, in violation of 29 U.S.C. § 1811(b) and 29 C.F.R. § 500.41(a).

140. As a result of the intentional actions or omissions of the Defendants, Plaintiffs Mondragon, Espinobarros Feliciano, Contreras, C. Ortiz Hernández, R. Ortiz Hernández, Romero Acuña, and Tapia and each member of the AWPA Class have suffered damages, and are entitled to payment of actual or statutory damages pursuant to 29 U.S.C. § 1854(c)(1) for each agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing, on information and belief, through the date that final judgment is entered in this action.

## SECOND CLAIM FOR RELIEF (NCWHA)

141. Paragraphs 1 through 140 above are realleged and incorporated herein by reference.

142. Defendants failed to pay Plaintiffs and each member of the NCWHA Class at least the promised wage for each hour or part of an hour that Plaintiff worked for Defendants for

31

each workweek in which they were required to pay Plaintiffs and members of the NCWHA Class the AEWR, in violation of N.C.G.S. § 95-25.6.

143.    As a result of these actions of the Defendants in violation of their rights under N.C.G.S. §§95-25.6, Plaintiffs and the members of the NCWHA Class have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

## CLAIM FOR DECLARATORY RELIEF

144.    Paragraphs 1 through 142 above are realleged and incorporated herein by reference.

145.    The parties named in this action and members of the AWPA Class that Plaintiffs seek to represent are in dispute as to their respective rights, privileges, obligations, and liabilities under the AWPA, and require declaratory relief as to what those respective rights, privileges, obligations, and liabilities are.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that the Court:

(a)    Grant a jury trial on all issues so triable;

(b)    Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify named Plaintiffs Ricardo Mondragon, Eustorgio Espinobarros Feliciano, Juan Contreras, Cutberto Ortiz Hernández, Ramón Ortiz Herndandez, Renato Romero Acuña, and José Tapia as representatives of the AWPA class alleged in Paragraphs 122 through 130 above with respect to the First Claim for Relief of this Complaint;

(c)    Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify named Plaintiffs Ricardo Mondragon, Eustorgio Espinobarros Feliciano, Juan Contreras, Cutberto Ortiz Hernández, Ramón Ortiz Herndandez, Alejandro Jimenez Gonzalez, Renato Romero Acuña, and José Tapia as

representatives of the NCWHA class alleged in Paragraphs 131 through 138 above with respect to the Second Claim for Relief of this Complaint;

(d)     For each separate agricultural season that occurred in the 3-year time period immediately preceding the date on which this action was filed and continuing through the date that final judgment is entered in this action, enter judgment against Defendants, jointly and severally, and in favor of named Plaintiffs and each member of the AWPA class defined in Paragraphs 122 through 130 above for actual damages, or statutory damages in the full amount authorized by 29 U.S.C. § 1854(c)(1), plus pre- and post-judgment interest at the full amount allowed by law under the First Claim for Relief;

(d)     Enter judgment against Defendants, jointly and severally, and in favor of named Plaintiffs and each member of the NCWHA Class defined in Paragraphs 131 through 138 above for unpaid back wages, liquidated damages where allowed by law, plus pre- and post-judgment interest at the full amount allowed by law under the Second Claim for Relief;

(e)     Enter judgment against defendant Scott Farms, Inc. and each of the individual defendants, jointly and severally, and in favor of named Plaintiffs and each member of the AWPA defined in Paragraphs 122 through 130 above for costs pursuant to 29 U.S.C. § 1854(a) and 28 U.S.C. § 1920;

(f)     Enter judgment against Defendants, jointly and severally, and in favor of named Plaintiffs and each member of the NCWHA class defined in Paragraphs 131 through 138 above for costs and a reasonable attorney's fee pursuant to N.C.Gen.Stat. § 95-25.22(d);

(g)     Grant named Plaintiffs and the members of the AWPA class that they seek to represent as defined in Paragraphs 122 through 130 declaratory relief that Defendants have violated the rights of named Plaintiffs and those other employees under the AWPA;

33

(h)     Award such other relief as may be just and proper in this action.

Respectfully submitted, this the 17th day of July 2017.

NORTH CAROLINA JUSTICE CENTER
P.O. Box 28068
Raleigh, NC 27611
(919)856-2144
(919)856-2175 fax

BY:/s/Carol L. Brooke, Esq.
        Carol L. Brooke
        (919)856-2144
        carol@ncjustice.org
        Attorney at Law
        NC Bar #29126
        Co-Counsel for Plaintiffs

LAW OFFICE OF ROBERT J. WILLIS, P.A.

BY:     /s/Robert J. Willis
         Robert J. Willis, Esq.
        Attorney at Law
        NC Bar #10730
        (mailing address)
        P.O. Box 1828
        Pittsboro, NC  27312
        (919) 821-9031 telephone
        (919) 821-1764 facsimile
        Co-Counsel for Plaintiffs
        rwillis@rjwillis-law.com