IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-00356-FL

| | |
|---|---|
| **Ricardo Mondragon,** et al., on behalf of themselves and all other similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> **Scott Farms, Inc.,** et al., <br><br> Defendants. | **Order** |

This order addresses a complex set of pre-trial disputes in a complex labor lawsuit about the cultivation of a simple, sweet, and starchy vegetable: the sweet potato.

Plaintiffs are all workers who contribute to the sweet potato farming operation of their alleged employer—the defendant in this case—Scott Farms. They seek to bring a class action and allege that Scott Farms has violated several state and federal labor laws mainly by not giving them and their similarly-situated co-workers the overtime pay that they were owed. Scott Farms, meanwhile, contends that the Plaintiffs and other similarly-situated employees were not owed overtime pay because of an exemption in the labor laws for agricultural workers.

Plaintiffs have served several rounds of discovery requests on Scott Farms, to which Scott Farms has timely responded. As is common in discovery, the Plaintiffs were dissatisfied with several of Scott's answers to their requests. The parties were unable to resolve their differences about discovery involving two major issues: 1) discovery related to H-2A visa workers and other disputed putative class members, and 2) discovery related to Scott's agricultural worker defense.

One of the issues raised in Plaintiffs' motion to compel dealt with a separate defense that Scott Farms raised in its Answer which would have absolved the employer of liability if it had acted pursuant to Department of Labor guidance. After Plaintiffs filed its motion to compel, Scott Farms says that it realized that it had accidentally pleaded this defense when, in reality, it had intended to plead another defense which would allow the court to limit liquidated damages if it violated labor laws in good faith. Scott Farms thus filed a motion to amend its Answer after the deadline to amend pleadings had passed.

Because Scott Farms filed its motion to amend its Answer in good faith and the Plaintiffs are not prejudiced by the amendment, the court will grant its motion to amend. The court will also grant in part and deny in part Plaintiffs' motion to compel because most of the discovery it seeks is relevant to the claims and defenses at issue and is proportional to the needs of the case.

## I.     Background

Plaintiffs are a group of ten domestic agricultural workers who allege violations of the Fair Labor Standards Act ("FLSA"), the North Carolina Wage and Hour Act ("NCWHA"), and the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA") by their alleged employers Scott Farms, Inc.; Alice H. Scott; Linwood H. Scott, Jr.; Linwood H. Scott, III; Dewey R. Scott (collectively "Scott"); JFT Harvesting, Inc.; and Oasis Harvesting, Inc. (JFT and Oasis will be collectively referred to as the "Torres Defendants"). Third Am. Compl. ¶¶ 171 (a)–(c), 174, D.E. 58. Plaintiffs allege that Scott violated the FLSA and NCWHA by not paying overtime wages for at least some weeks that they and their co-workers processed sweet potatoes grown by Scott's contract growers. *Id.* ¶¶ 158–62, 166–69. The alleged AWPA violations and other NCWHA violations arise from Scott's failure to pay the Plaintiffs and some of its other domestic workers the Adverse Effect Wage Rate ("AEWR"), which is the rate employers must pay domestic workers

if they also employ workers who have H-2A visas to do similar work. *Id.* ¶ 144; 20 CF.R. § 655.103(b); 20 C.F.R. § 655.122. Scott has raised a number of affirmative defenses to these allegations. Scott's Answer to Pls.' Third Am. Compl. at 33–34, D.E. 61.

Plaintiffs seek to certify this matter as a class action and propose four different sets of class members. The first class ("AWPA Class") would consist of "all non-H-2A migrant and seasonal agricultural workers who were employed by one of more of the Defendants to work at Scott Farms in corresponding employment" from 2014 until judgment is entered. *Id.* ¶ 146. The common questions of law and fact include whether the Defendants provided false information to the class members about the availability of H-2A positions and how much class members were owed for that work; whether Defendants paid class members less than the AEWR while employing H-2A workers; whether Scott reasonably attempted to determine whether the Torres Defendants "possessed a valid farm labor contractor registration certificate;" and whether the Torres Defendants possessed a farm labor contractor certificate "for all time periods covered by the complaint." *Id.* ¶ 148.

The second class ("NCWHA Class #1") would include "all non-H-2A farmworkers who were employed by one or more of the Defendants to perform work at Scott Farms in corresponding employment" from 2015 until the date judgment is entered. *Id.* ¶ 152. The common questions that the Plaintiffs allege include whether all Defendants are joint employers of H-2A workers and the class members, whether class members performed the same authorized or unauthorized tasks as H-2A workers, and whether Defendants failed to pay class members a promised rate while they employed H-2A workers. *Id.* ¶ 154.

The third class ("NCWHA Class #2") would include "all employees of Defendants who were and/or will not be paid all wages when due on their regular payday at the wage rate disclosed

to them" for overtime work that was done in Scott's packinghouse on sweet potatoes that were not "produced" by Scott. *Id.* ¶ 158. The common questions alleged for this class are whether class members were told that they would receive overtime wages for weeks in which no overtime exemption applied to their work pursuant to North Carolina General Statutes §§ 95–25.13(1)–(2) and § 12.0803 of Title 13 of the North Carolina Administrative Code and whether Defendants paid overtime wages for all overtime hours worked in the packinghouse. *Id.* ¶ 160.

The fourth class ("FLSA class") allegedly includes all "persons who were or will be employed in the packinghouse operated by Scott Farms for varying periods of time to unload, pack, and process sweet potatoes . . . that were and are produced by person(s) or entities other than Scott . . ." during the three years before the person files a Consent to Sue pursuant to 29 U.S.C. § 216(b). *Id.* ¶ 166. Plaintiffs allege that several of the named Plaintiffs and at least 50 other employees worked in the packinghouse and were not paid overtime for the weeks in which they worked more than 40 hours. *Id.* ¶ 168.

Shortly after Plaintiffs filed their second of three amended complaints in December 2017, they served their First Set of Interrogatories and First Requests for Production of Documents on all Defendants. Scott timely replied in February 2018. After several months of supplementations of discovery responses by Scott and unsatisfactory informal discussions about disputes between the parties, Plaintiffs filed a Motion to Compel Discovery in August 2018. Plaintiffs have asked the court to compel Scott to fully respond to a number of their interrogatories and to produce responsive documents to a number of their document requests. While the parties have a variety of discovery disputes that this court will address, most of the disputes about Scott's responses center around discovery regarding H-2A workers that worked at Scott Farms and Scott's Seventh and

4

Eighth Defenses claiming that it is exempt from the FLSA and NCWHA's overtime and maximum hours requirements ("the agricultural exemption"). *See* 29 U.S.C. § 213 (b)(12).

About a month after the discovery dispute came to a head and six months after the deadline to amend pleadings had passed, Scott filed a Motion to Amend its Answer. Def.'s Mot. to Amend, D.E. 90. In the Motion, it seeks to amend its Second Defense. This defense is currently based on 29 U.S.C. § 259, which bars liability for defendants in FLSA actions if "the act or omission complained of was in good faith conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of [the Administrator of the Wage and Hour Division of the Department of Labor]." D.E. 61 at 33; 29 U.S.C. § 259(a)–259(b)(1). The Motion to Amend seeks to change Scott's Second Defense from a § 259 defense to a defense based on the next section in the statute, 29 U.S.C. § 260. A § 260 defense allows the court to limit an award of liquidated damages awarded to successful plaintiffs in FLSA actions "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act . . ."

Because one of the disputes in the Motion to Compel relates to the § 259 defense that Scott seeks to amend (Interrogatory 12), the court will first address Defendant's Motion to Amend before turning to Plaintiffs' Motion to Compel.

## II.     Scott's Motion to Amend Answer

Scott moves for leave to amend its Answer to include a § 260 defense instead of a § 259 defense. It claims that it attempted to correct the error in the initial pleading as soon as it could; that the error was not made in bad faith; that granting it leave to change the defense will not prejudice the Plaintiffs because they already have all discovery relevant to Scott's good-faith

5

defense; and that amending its Answer is not futile because the aforementioned discovery provides a factual basis for a § 260 defense. Scott's Mem. in Supp. of Mot. to Amend at 7–8, D.E. 91. But in opposition to the motion, Plaintiffs argue that Scott's attempt to amend its Answer was made without good cause or good faith; that it will unfairly prejudice the Plaintiffs because it will necessitate new, time-consuming discovery requests; and that the amendment would be futile because the documents that Scott has provided are insufficient for a § 260 defense as a matter of law. Pl.'s Resp. in Opp'n, at 5–14, D.E. 95.

District courts should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). But the Fourth Circuit has explained that "after the deadlines provided by a scheduling order have passed, the good cause standard [of Rule 16(b)(4)] must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp.* v. *Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). The good cause standard focuses on the diligence of the party seeking the proposed amendment. *McMillan* v. *Cumberland Cty Bd. of Ed.*, 734 F. App'x 836, 845–46 (4th Cir. 2018). If a moving party can show good cause to amend its pleading past the deadline in the scheduling order, a motion to amend will only be denied if amendment would be prejudicial to the other party, there has been bad faith by the moving party, or amendment would be futile. *Edwards* v. *City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999) (*citing Johnson* v. *Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

As to the good cause requirement, Scott claims that the error was a "scrivener error" and that Scott's counsel overlooked the mistake until recent discussions attempting to resolve discovery disputes. Mem. in Supp. at 4–5. Yet Plaintiffs point to numerous instances where Scott should have reasonably been alerted to the fact that it had plead a § 259 defense and not a § 260 defense. Scott has specifically plead this defense in all its answers to the four versions of Plaintiffs'

complaint. Plaintiffs have made detailed discovery requests that track the language of § 259 and have cited and quoted language from this section in correspondence with Scott dating back to March 2018. Pl.'s Resp. at 5–7. In addition, Plaintiffs have deposed witnesses about the § 259 defense in the presence of Scott's counsel and engaged in opposition to Plaintiffs' motion to compel discovery for the Plaintiffs' interrogatory asking for discovery concerning the § 259 defense. *Id.* at 7–8.

While the actions of Scott's counsel are not a model of diligence, the court believes that he has attempted to amend Scott's Second Defense to accurately reflect the law as soon as he was aware of the issue with Scott's Answer. There is no evidence that this was done in bad faith to prejudice the Plaintiffs in any way—in fact, Scott has represented to this court that it has already provided Plaintiffs with the documents that it contends will support a § 260 defense. Mem. in Supp. at 6.

Without deciding whether a § 260 defense must be plead affirmatively, the court notes that Plaintiffs should not be surprised that Scott's general good faith would be an issue in this case as Scott's Answer denied Plaintiff's allegations of bad faith. *Id.* at 5–6. Plaintiffs also argue that it would be futile to allow Scott to make its proposed amendment because the information that Scott claims it relied on when it acted in good faith would not be a basis for a § 260 good-faith defense as a matter of law. Pl.'s Resp. at 13–14. A § 260 defense allows the court to limit liquidated damages if the defendant can show "to the satisfaction of the court" that it did not believe it was violating the FLSA. *De Luna-Guerrero* v. *N.C. Grower's Ass'n., Inc.*, 370 F. Supp. 2d 386, 396 (E.D.N.C. 2005). Scott's Department of Labor investigation and the Paychex Employee Handbook seem to provide some factual basis for Scott to argue it acted in good faith, and the court may

decide whether to limit liquidated damages under § 260 based on this evidence later; thus, it would be inappropriate for the court to find that this defense is futile now.

For these reasons, the court grants Scott's motion for leave to amend its Answer.

## III.    Plaintiffs' Motion to Compel

The court will now turn to Plaintiffs' Motion to Compel Discovery. As a general matter, the Federal Rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The Rules also provide several tools to conduct discovery, including interrogatories and requests for production of documents. *See* Fed. R. Civ. P. 33–34. Inevitably, disagreements arise about whether a party has adequately responded to a discovery request and whether the response complies with the Rules' requirements. In such a circumstance, the requesting party may ask the court to compel the requesting party to comply with the Rules. Fed. R. Civ. P. 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirklands, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

Many of the disputes regarding individual discovery requests center around the same issues, so the court will address each of these issues separately.[1]

### a.    Scott's Objection that Plaintiffs Exceeded the Interrogatory Limit

In its response to Interrogatories 8–14 (Plaintiffs' last six interrogatories) Scott objects that "Plaintiffs have exceeded the limit of 25 interrogatories, including sub-parts, allowed by Rule 33

---

[1] The court will not address Interrogatory 12 because it has granted Scott leave to amend this defense.  Thus, the motion to compel will be denied as moot with respect to Interrogatory 12.

of the Federal Rules of Civil Procedure and the Case Management Order in this action." Pl.'s Mot. to Compel Ex. 5 at 12–16, 23–24, D.E. 71–5; Pl.'s Mem. in Supp. of Mot. to Compel at 9, D.E. 72. Despite claiming that Plaintiffs have exceeded the allowable number of interrogatories, Scott proceeds to selectively answer some, but not all of the remaining interrogatories. Mot. to Compel Ex. 5 at 12–16, 23–24. Plaintiffs counter that all of its subparts are sufficiently related to the primary question, and thus, they have not exceeded the interrogatory limit. Pl.'s Mem. in Supp. at 9. While Scott may have had a colorable argument that Plaintiffs exceeded the interrogatory limit, it waived this objection by raising it, but then answering, portions of the last six interrogatories.

Rule 33 allows a party to serve "no more than 25 written interrogatories, including discrete subparts" unless the court orders or the parties stipulate otherwise. Fed. R. Civ. P. 33(a)(1). This rule is intended to increase the efficiency of the interrogatory practice. Fed. R. Civ. P. 33(a)(1) (1993 Advisory Committee Notes); *see also Capacchione* v. *Charlotte-Mecklenburg Sch.*, 182 F.R.D. 486, 492 (W.D.N.C. 1998) (noting that "the limit also serves to force parties to make prudent and constructive use of this discovery device.").

When a party is confronted with what it believes to be an excessive number of interrogatories, the appropriate course of action is to either move for a protective order before answering any interrogatories or "answer up to the numerical limit and object to the remainder without answering."[2] *Capacchione* v. *Charlotte-Mecklenburg Schs.*, 182 F.R.D. 486, 493 n.4 (W.D.N.C. 1998) (citing 7 *Moore's Federal Practice* § 33.30[1]); *Paananen* v. *Cellco P'ship*, No. CO8–1042, 2009 WL 3327227, 5 (W.D. Wash. 2009) ("the best rule, and the one this Court applies

---

[2] Although some older cases have held differently, allowing the responding party to answer up to what it believes to be the numerical limit is consistent with the more recent revisions to the Rules of Civil Procedure that an interrogatory must be answered "to the extent it not objected to[.]" Fed. R. Civ. P. 33(b). This practice also allows at least some information to be shared with the responding party promptly instead of withholding all information until after the court addresses a motion to compel or motion for a protective order.

here, is that a responding party must answer the first 25 interrogatories"). If a party, instead, decides to answer some or all of the allegedly excessive interrogatories, it waives its objection that the requesting party has violated Rule 33's limit on the number of interrogatories a party may serve. *Knit With* v. *Knitting Fever, Inc.*, 2010 WL 11474937, at *1 n.2 (E.D. Pa. Jan. 22, 2010) ("Notwithstanding [d]efendant's non-waiver statement, it remains established that if a party selectively answers interrogatories, it has waived its objections [under Rule 33(a)] as to the remaining interrogatories."); *Capacchione*, 182 F.R.D. at 492 ("Yet, CMS, by responding to Interrogatories 21–25 without moving for a protective order, waived any objection on grounds of the twenty-interrogatory limit."); *Herdlein Techs., Inc.* v. *Century Contractors, Inc.*, 147 F.R.D. 103, 104–05 (W.D.N.C. 1993) (finding that answering interrogatories in excess of the numerical limit constituted a waiver of an argument based on the number of allowable interrogatories).

Here, Scott has selectively answered interrogatories beyond what it contends is the 25-interrogatory limit. By doing so, it has waived any objection that it had to the number of interrogatories that Plaintiffs served on it. Thus, the motion to compel shall be granted and, to the extent Scott did not respond to certain interrogatories on the basis of this objection, it shall do so.

### b. Scott's Communications with Plaintiffs and Putative Class Members

Request for Production 39 asks Scott to produce all communications between Scott and any Plaintiff or member of the putative classes. Mot. to Comp. Ex. 3 at 17. Request 40 asks Scott to produce any of its communications with the Torres Defendants "regarding work assignments, work schedules, recruitment of H-2A workers, H-2A worker housing, rates of pay, or other terms and conditions of employment for any . . . worker . . . that [any Defendant] employed . . ." *Id.* Both of these Requests ask for communications dating back to January 1, 2014. *Id.* To Request 39, Scott objected that the Request was overly broad and unduly burdensome, and that it could not determine

10

exactly which communications were being requested because the collective action groups have not yet been determined. In both of Scott's responses, Scott indicated that it was unable to find any communications that would fit the Requests, but that it would continue to supplement its responses to these Requests "if non-privileged, responsive information is located." Mot. to Comp., Ex. 5, at 5–6.

Plaintiffs have had several issues with Scott's production of the communications, and the parties have indicated to the court that they are cooperating on some of their issues with these Requests. To assist Scott in responding to Request 39, the Plaintiffs have given Scott a list of phone numbers of the named Plaintiffs, and Scott has agreed to search for communications between Scott and those phone numbers. In response to Request 40, Scott has produced some texts and e-mails between the Defendants, but Plaintiffs complain that they have only produced e-mails from 2017 and 2018 and have only produced text messages dating back to July 2018.

Regarding Request 39, it appears to the court that the parties have already come to an agreement to ease the burden of the Request on Scott. Scott need only produce cell phone communications with phone numbers provided by the Plaintiffs. At this point in the lawsuit— before class certification—the court finds that it is only proportional to the needs of the case for Scott to produce communications between Scott and the named Plaintiffs. While plaintiffs are generally entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met, *Haywood* v. *Barnes*, 109 F.R.D. 568, 575–76 (E.D.N.C. 1986), this discovery is not unlimited. The phone communications between all putative class members and Scott, while potentially relevant considering some of the Plaintiffs' allegations about what was communicated to putative class members, *see, e.g.*, Third Am. Compl. ¶¶ 143–44 & 148, these claims are not at the heart of the case. The Third Amended Complaint

does not allege that relevant wage information was communicated to the Plaintiffs via phone communications, and it seems likely that Scott's wage and hour policies were not communicated via the electronic communications that Plaintiffs seek. Production of all Scott's communications with the putative class members is not "proportional to the needs of the case" at this time. Fed. R. Civ. Pro. 26(b)(1).

Therefore, Scott is ordered to produce all communications in its possession, custody, or control requested in Request 39 with respect to the named Plaintiffs, and only if the Plaintiffs provide Scott with the phone numbers to search its records for. If the court certifies any of the proposed classes, the Plaintiffs may renew its request with respect to the class members. If Scott believes the additional production is not proportional to the needs of the case after class certification, Scott may move for a protective order at that time.

As to Request 40, Scott has presented no objection as to why it should not have to produce responsive communications from the entire time period that Plaintiffs seek them. Plaintiffs' motion to compel production of the communications between Defendants sought in Request 40 is granted. Scott shall produce these electronic communications in its possession, custody, or control dating back to January 1, 2014.

### c. Records for H-2A Workers and Other Disputed Putative Class Members

Some of the parties' dispute surrounding Interrogatories 1, 6, and 13, and Requests for Production of Documents 7–9, 14, 22, and 36 centers around Scott's production of documents relating to H-2A workers and certain other disputed putative class members. The court will address this issue generally and will then apply its analysis to each disputed discovery request.

Scott first argues that the requests at issue are overbroad, in that they seek information for workers who have not performed the same work during the same time period as the named Plaintiffs and are thus not similarly-situated. This would make the workers who did not perform

12

the same work as the named Plaintiffs outside of the scope of putative class members—making the information irrelevant to class certification. Scott's Resp. to Pl.'s Mot. to Compel, D.E. 77, at 5. Plaintiffs, however, contend that they need work assignment and wage information for workers who worked the same jobs as the named Plaintiffs for the entire period of the allegations in the lawsuit—even if the named Plaintiffs only performed those jobs seldomly—to show that the classes that they have alleged should be certified. Mem. in Supp., at 5–6.

Scott also argues that, as a general matter, H-2A worker information is not relevant to class certification of any of the proposed classes, and that even if it were, Plaintiffs have already received the information that they are seeking from the Torres Defendants. *Id.* at 5–6. But Plaintiffs counter that the H-2A worker information is relevant to their claims and to class certification to show 1) that non-H-2A workers were performing the same jobs as the H-2A workers for their AWPA claims and 2) that H-2A workers are potential class members for the NCWHA Class #2 and the FLSA Class because they allegedly were also not paid overtime to which they were entitled and promised. *Id.*

Even if the court assumes that at this point it is only appropriate to compel discovery of information that is relevant to class certification, it must grant the Plaintiffs' motion to compel discovery of all requested putative class member and H-2A worker information. Plaintiffs allege the first three classes under Rule 23(b)(3). Compl. ¶¶ 149, 152, 158. For a Rule 23 class to be certified, it must satisfy the requirements of Rule 23(a) and one of the alternatives in Rule 23(b). Rule 23(a) requires that (1) the proposed class be sufficiently numerous; (2) there is at least one common question of law or fact; (3) the named plaintiffs' claims are typical of the whole class; and (4) the named plaintiffs will adequately represent the class. Fed. R. Civ. P. 23(a). Rule 23(b) has several additional alternative criteria for a class to be certified. Relevant here, Rule 23(b)(3)

permits a class action if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The FLSA Class is alleged under 29 U.S.C. § 216 (b), which gives employees a cause of action to sue on behalf of themselves and other similarly-situated employees for several types of FLSA violations by their employers—including minimum wage and hours violations. For this type of class action, "similarly situated" means "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *De Luna-Guerrero,* 338 F. Supp. 2d, at 654.

The difference between class certification and merits discovery is not always clear-cut, as class action named plaintiffs must be able to assess whether others are similarly-situated and have similar claims for class certification. *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 351 (2011). A preliminary inquiry into the merits may be required to decide whether the claims and defenses can be presented and resolved on a class-wide basis. *Szabo* v. *Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). And in this case, it is unnecessary for the court to attempt to separate these issues. The information and documents that Plaintiffs have requested is relevant to class certification for at least three of the alleged classes, and it is thus appropriate for the court to grant Plaintiffs Motion to Compel production of all putative class member information.

Scott's objection to producing records for workers who did not work during the same times doing the same jobs as the named Plaintiffs is misplaced. Plaintiffs have alleged a class action pursuant to Rule 23(b)(3), with common questions of law and fact for both the NCWHA Class #1 and the AWPA class that include whether class members were performing the same work listed on the H-2A workers' Clearance Orders and whether they were being paid the AEWR. Third Am.

14

Compl. ¶¶ 148, 154. Common question for the NCWHA Class #2 include whether Scott was paying promised overtime wages to workers doing non-exempt work. *Id.* ¶¶ 158–160. Plaintiffs also allege that all of Scott's workers were potentially denied overtime wages for non-exempt work (FLSA Class). *Id.* ¶ 166. To show typicality of claims and common questions of law or fact, Plaintiffs must be able to show that the class members of NCWHA #2 and the FLSA Class were not being paid promised overtime wages and that the class members of NCWHA #1 and the AWPA class were not being paid the AEWR but were doing the same work as the H-2A workers. Plaintiffs need the wage and hour information of Scott's domestic agricultural workers to show that they were similarly situated to the named Plaintiffs for class certification.

The relevance of the H-2A worker information, on the other hand, is only relevant to the class certification of one of the proposed classes.

For purposes of supporting the FLSA claims, the relevance of the H-2A worker information is relatively low until that class is certified. Plaintiffs have already filed a motion to certify the FLSA Class, D.E. 98, and thus cannot use any of the yet-to-be-produced H-2A worker information to support conditional class certification for that class. The H-2A worker information that could potentially support their claims that H-2A workers are similarly situated to the named Plaintiffs is not relevant unless the court rules that H-2A workers are potential opt-in class members. Class certification under the FLSA is a two-step process: first the court conditionally certifies a class based on a limited record, then, when discovery is complete, the defendant moves to decertify the class. *Zelaya* v. *A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13-CV-810-F, 2015 WL 5703569, at *3 (E.D.N.C. Sept. 28, 2015). If the court finds that H-2A workers are members of the conditional class, then Plaintiffs will need their information to rebut Scott's motion to decertify the class. The relevance of the H-2A worker information may also be low to the certification of

the AWPA and NCWHA #1 classes because the Plaintiffs just need to show that domestic worker putative class members were paid less than the AEWR (a fixed wage published by the Department of Labor) during the time covered by the Clearance Order to show commonality, typicality, numerosity, etc.

But this information is relevant to the certification of the NCWHA Class #2. H-2A workers, like domestic workers, are owed overtime pay for non-exempt work. 20 C.F.R. § 655.1300(d)(1)(ii). Plaintiffs must access this requested information prior to class certification to show numerosity, commonality and typicality of claims. For the purposes of NCWHA Class #2 class membership, it does not matter that the named Plaintiffs are not H-2A workers; both domestic and H-2A workers are entitled to overtime pay for most work. *Id.*; 29 U.S.C. § 207(a); 29 USC §213(b)(16). And both are entitled to be paid promised wages. N.C. Gen. Stat. § 95–25.13(1)–(2). Because the H-2A worker information is only relevant to the NCWHA Class #2 certification at this point, and these allegations only reach back to the two years before the original filing of the Complaint, Third Am. Compl. ¶ 158, Scott will only need to produce records for H-2A workers for that period and not the three-year period alleged for the AWPA Class. Third Am Compl. ¶ 146.

And finally, although the Plaintiffs may have obtained much of the H-2A worker information that they are seeking from the Torres Defendants, that does not absolve Scott from the responsibility of producing any such information in its own possession, custody, or control. Scott has not shown that it would be an undue burden, or otherwise objectionable, for it to produce this information, thus it shall produce the requested H-2A worker information that it has.

Applying these principles, the court will briefly discuss their implications for each pertinent request for discovery.

### i. Interrogatory 1

Interrogatory 1 asks Scott to identify all its workers (including H-2A workers), the start and end dates of those workers' employment, and, essentially, what work they were doing and when they were doing it for the time period covered in the lawsuit. D.E. 71–2 at 14.

To the extent that Scott has withheld the information of its workers that did not work the under the same job codes during the same time periods as the named Plaintiffs, it shall turn over all domestic worker information requested by Interrogatory 1 for the three years prior to the filing of this lawsuit and all H-2A worker information for the two years prior to the filing of this lawsuit.

Scott may continue to withhold information pertaining to its employees who are indisputably not putative class members—such as administrative employees who were never working under the same job codes as any of the named Plaintiffs. This information is not relevant to this case.

Plaintiffs have also requested the start and end dates of employment of the employees identified by this interrogatory. Mot. to Compel, Ex. 2, at 15. Scott has not raised an objection to providing this information. *See* Mot. to Compel, Ex. 5, at 5–6; D.E. 77. Scott shall produce any of the requested start and end dates.

### ii. Interrogatory 6

Interrogatory 6 asks (in 15 subparts) for a range of information regarding the workers identified in Interrogatory 1. Mot. to Compel, Ex. 2, at 17–23.

If Scott has withheld any information regarding domestic workers who did not work during the same periods under the same job codes as the named Plaintiffs, it shall produce that information for the three years prior to the filing of the Complaint. If it has already produced all responsive

17

information to any of the subparts (subpart j, for example), it shall supplement its responses to certify that it has fully responded.

### iii.    *Request for Production of Documents 6(e)*

Request for Production 6(e) asks for documents that show "the nature and amount of the work performed" by all of Scott's workers and requests that Scott "identify" each worker pursuant to Instruction 12. Mot. to Compel, Ex. 1, at 6–7; 17–18.

If Scott has withheld any documents that contain any of this information, it shall produce it for the three years prior to the filing of the Complaint with respect to the domestic workers and the two years prior to the filing of the Complaint with respect to the H-2A workers.

### iv.    *Request for Production of Documents 7*

Requests for Production 7–9 ask for the payroll records of all putative class members, including the H-2A workers.[3]

If Scott has withheld any documents that contain any of this information, it shall produce them for the three years prior to the filing of the Complaint with respect to the domestic workers and the two years prior to the filing of the Complaint with respect to the H-2A workers.

---

[3] The court notes that Plaintiffs specifically requested that all electronically-stored information be produced in a format compatible with Microsoft Word or Excel, Mot. to Compel, Ex. 1, at 3, and that the information sought in RPDs 7–9 specifically be produced in a format compatible with Microsoft Excel. *Id.* at 19–20. An issue that was brought to the court's attention during a teleconference with the parties and during a hearing on the Plaintiffs' Motion to Compel was the fact that Scott has not produced many of its records in the format that the Plaintiffs' have requested. The Federal Rules of Civil Procedure allow parties to "specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). And if the party does not so specify, the producing party may produce the requested documents in a form "in which it is ordinarily maintained or in a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E)(ii). Plaintiffs have specified the form in which they would like electronic documents; therefore, Scott should produce electronically-stored documents in that form. If, as Scott has represented to this court, putting documents in this form would be an undue burden, disproportionate to the needs of the case, Scott should file a motion for a protective order supported by some evidence of this for the court's review. The court can then use a "balancing approach" to determine if the production of requested documents in the Plaintiffs' requested format is warranted. *See Rowe Entertainment, Inc.* v. *William Morris Agency, Inc.*, 205 F.R.D. 421, 429 (S.D.N.Y. 2002).

18

*v.* *Request for Production of Documents 14*

Request for Production of Documents 14 requests documents that show how long Scott's workers were working and/or how much work they were doing each day. Mot to Compel, Ex 1, at 21–22.

The Plaintiffs have told the court that Scott has responded to this request with respect to most of the domestic workers, but not H-2A workers and the packinghouse workers. Scott shall produce the H-2A worker information for the two years prior to the filing of the Complaint. The court will address the requested information for the packinghouse workers in the next Section.

*vi.* *Request for Production of Documents 22*

Request for Production of Documents 22 asks for any kind of pay receipts or statements for any of Scott's workers. Mot. to Compel, Ex. 1, at 23.

If Scott has any of the requested payment receipts in its possession, custody, or control, it shall produce it for the three years prior to the filing of the Complaint with respect to the domestic workers and the two years prior to the filing of the Complaint with respect to the H-2A workers.

*vii.* *Request for Production of Documents 36*

Request for Production of Documents 36 asks for documents related to the work schedules of any of Scott's workers. D.E. 71–1 at 27.

The Plaintiffs have told the court that Scott has responded to this request with respect to most of the domestic workers, but not H-2A workers. Scott shall produce the H-2A worker information for the two years prior to the filing of the Complaint.

#### d. Discovery Related to Scott's Seventh and Eighth Defenses

The next dispute that the court will address is the discovery that Plaintiffs have requested that is relevant to Scott's Seventh and Eighth defenses. These requests include all or part of Interrogatory Nos. 1(c), 6, and 13; Requests for Production 3–5, 26, 27, and 34.

Scott's Seventh and Eighth Defenses claim that the agricultural worker Plaintiffs and putative class members are exempt from the requirements of the FLSA and the NCWHA. Answer to Third Am. Compl., D.E. 61, at 34. The crux of these claimed defenses is that Scott believes that the workers to whom it did not pay overtime were subject to the FLSA's "agricultural exemption," and thus were not owed overtime wages. But Plaintiffs counter that certain Scott employees, namely those working in Scott's packinghouse processing sweet potatoes that were not a part of Scott's farming operation, were owed and denied overtime wages. Third Am. Compl. ¶ 2.

To support their contention that some of the work done by Scott's workers in the packinghouse was not subject to the agricultural exemption for overtime wages, Plaintiffs have made a variety of requests that ask Scott to distinguish certain sweet potatoes processed in its packinghouse. Plaintiffs intend to rely on a description of non-exempt work in a recent case from the Southern District of Georgia, *Acosta* v. *Bland Farms Production & Packing, LLC*, and the instructions to Plaintiffs' Interrogatories and Requests for Production of Documents clearly reflect that. Both Instruction #31 to the Interrogatories, and Instruction #28 to the Requests for Production ask Defendants to identify (when asked) sweet potatoes that do not fit the description of secondary agricultural products—the packing of which is not covered by the FLSA's agricultural exemption—explicitly as these products are defined in *Bland Farms*. Mot. to Compel, Ex. 1, at 28–29; *Id.*, Ex. 2, at 12–13.

Scott objects to many of these requests by claiming that they seek information is irrelevant, overly broad, unduly burdensome, vague, and disproportionate to the needs of the case. Mot. to Compel, Ex. 4, at 5–6, 12, 14; *Id.*, Ex. 5, at 5–6, 9–10, 15. They elaborate by arguing that, because there is no evidence that the named Plaintiffs worked in the packinghouse for any significant period of time during the time relevant to the complaint, "discovery about all of the potatoes packed in Scott Farms' packing house or purchased or handled by Scott Farms employee for a period of more than four years is wildly disproportionate to the potential evidentiary value of the information that might be obtained." Def.'s Resp., at 6–7.

The FLSA requires employers to pay employees time and a half for hours in excess of 40 hours a week, 29 U.S.C. § 207(a)(1), but there are some exceptions to that rule. One important exception is the so-called "agricultural exemption," which excepts "any employee employed in agriculture" from the FLSA's maximum-hour requirement. 29 U.S.C. § 213(b)(12). Under the FLSA, "agriculture" can mean "the cultivation and tillage of the soil, . . . cultivation, growing, and harvesting of any agricultural or horticultural commodities . . . and any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations." 29 U.S.C. § 203(f).

The Supreme Court has identified "two distinct branches" of agriculture: primary and secondary. *Farmers Reservoir & Irrigation Co.* v. *McComb*, 337 U.S. 755, 762–63 (1949); *Bayside Enters., Inc.* v. *N.L.R.B.*, 429 U.S. 298, 300–301 (1977). Primary agriculture includes, for example, "specific practices such as cultivation and tillage of soil, dairying, etc." *Farmers Reservoir & Irrigation Co.*, 337 U.S. at 762. Secondary agriculture has a broader meaning and includes "any practices, whether or not themselves farming practices, which are performed either by a farmer on a farm, incidentally to or in conjunction with 'such' farming operations." *Id.* at 763.

21

When employees are handling or working on the agricultural products raised on farms other than their employer's, they are performing work that is "incidental to or in connection with farming operations;" they are not engaged in secondary agriculture and are therefore not subject to the FLSA's agricultural exemption. *Holly Farms Corp.* v. *N.L.R.B.*, 48 F.3d 1360, 1371 (4th Cir. 1995), *aff'd*, 517 U.S. 392 (1996); *see* 29 C.F.R. § 780.137 ("The processing by a farmer of commodities of other farmers, if incident to or in conjunction with farming operations, is incidental to or in conjunction with the farming operations of the other farmers and not incidental to or in conjunction with the farming operations of the farmer doing the processing.").

Courts have not yet had many opportunities to decide when an agricultural product being processed on an integrated farming operation actually belongs to that operation. One district court recently held that the defendant employer "was not the farmer of the [product] grown by contract growers" when it "did not own the [product] throughout the growing process," when the contract growers "carried the risk of loss and paid all costs involved in growing" the product, and did not pay all of the costs of harvesting. *Acosta* v. *Bland Farms Prod. & Packing, LLC*, 276 F. Supp. 3d 1370, 1378 (S.D. Ga. 2017).

The court need not decide at this point whether the *Bland Farms* standard is the correct standard to use to determine if Scott's Seventh and Eighth Defenses apply to the work that Plaintiffs and putative class members were doing on certain sweet potatoes in Scott's packinghouse. The Plaintiffs have chosen to request information based on a standard from a case from a district court in another circuit that is currently on appeal. When deciding dispositive motions, a court in this district may not apply the same standard.

But the potential exists that this court may apply the *Bland Farms* standard, so the court will allow Plaintiffs to conduct discovery related to it. Thus, the court finds that the discovery that

Plaintiffs have requested with respect to Scott's Seventh and Eighth Defenses is not irrelevant to a standard that the court could use to interpret whether all or some of Scott's packinghouse workers were subject to the agricultural exemption as interpreted by the Supreme Court in *Bayside Enters., Inc.* and *Farmers Reservoir & Irrigation Co*. At the very least, the law in this area is unsettled and unclear in the Fourth Circuit. *See Holly Farms Corp.* v. *N.L.R.B.*, 48 F.3d 1360, 1372–73 (4th Cir. 1995) (Niemeyer J., dissenting) (disagreeing that "chicken catchers, fork lift operators, and live-haul drivers" were not covered by the agricultural exemption because they were involved in "preparation for market" and "delivery to storage or to market"). And there is no case in the Fourth Circuit that addresses which packaged products belong to the employer, making their processing and packaging subject to the agricultural exemption. Plaintiffs take the risk that the discovery that they are requesting will not be the discovery they need when the court decides dispositive motions.

Accordingly, if it is able, Scott shall produce the information that Plaintiffs have requested with respect to its Seventh and Eighth Defenses. This shall include packinghouse worker information and requested information about Scott's contract growers. Scott's objection that, because the named Plaintiffs apparently did not spend much time working in the sweet potato packinghouse the information sought is disproportionate to the needs of the case, is overruled. The information about packinghouse workers, the origin of the sweet potatoes being processed, and the information about the contract growers is relevant to the Plaintiffs' claims. They are also relevant to class certification because Plaintiffs claim that they and putative class members were not paid promised overtime wages for non-exempt work (NCWHA Class #2), and the information about the relationship between Scott and the contract growers could help the Plaintiffs assess whether the work was non-exempt.

It does not matter that named Plaintiffs may not have spent much time working in the packinghouse. The information is relevant to the claims of two of the classes and the typicality and numerosity of one of the proposed classes, so it is not disproportionate to the needs of the case to order its discovery. Scott's argument that discovery relating to the putative class is inappropriate because the named Plaintiffs did not often work in the packinghouse is misplaced. This argument is essentially Scott's speculation that the named Plaintiffs cannot adequately represent class members and that their claims are not typical of class members, which belongs in a memorandum opposing class certification of the NCWHA Class #2 or FLSA Class. *See Deiter* v. *Microsoft Corp.*, 436 F.3d 461, 466–467 (4th Cir. 2006) (expanding on Rule 23(a)(3)'s typicality requirement for class certification).

   i.   *Interrogatory 1(c)*

Interrogatory 1(c) (when read in conjunction with Instruction #31) asks Scott to identify workers and dates of work for workers who processed sweet potatoes that were not secondary agricultural products, as defined by the *Bland Farms* court. Mot. to Compel, Ex. 2, at 14; *see id.* at 12–13 (Instruction 31).

To the extent that Scott is able to make this distinction, it will answer this interrogatory. It will identify when its workers were working in the packinghouse on sweet potatoes that meet the *Bland Farms* criteria.

   ii.  *Interrogatory 6*

Several of the subparts of Interrogatory 6 (a, b, c, d, f, g, h, i, m), when read in conjunction with Interrogatory 1(c), ask for information regarding workers that worked in Scott's packinghouse, subpart l asks Scott to state whether the identified workers were working on Scott's secondary agricultural products (as defined in *Bland Farms*), and other subparts (n, o) ask for

identification and contractual information about Scott's contract growers. Mot. to Compel, Ex. 2, at 19–23; *see id.* at 12–13 (Instruction 31).

If Scott has withheld information about the workers in its packinghouse during the three years prior to the filing of the Complaint, as requested in subparts a, b, c, d, f, g, h, i, and m, it will answer those subparts. It will identify whether any of the sweet potatoes processed by the workers it has identified in the packinghouse meet the *Bland Farms* criteria, as requested by subpart l. Scott will also fully identify the contract growers of any sweet potatoes identified in subpart l as requested by subpart n, and it will identify the terms of any agreements that it had with those growers, as requested by subpart o.

### iii. *Interrogatory 13*

Interrogatory 13, in seven subparts, essentially asks Scott to identify and provide specific information about the origin and work done on sweet potatoes it processed in its packinghouse that were not secondary agricultural products under the *Bland Farms* standard. Mot. to Compel, Ex. 2, at 31–32; *see id.* at 12–13 (Instruction 31).

All the subparts of this interrogatory shall be answered to the best of Scott's ability.

### iv. *Requests for Production 3–5*

Requests for Production 3–5 ask for contracts, receipts, etc. between Scott and its contract growers during the time relevant to the lawsuit. Mot. to Compel, Ex 1, at 15–17.

Scott has indicated to the court that many of these requested documents may not exist. If they do not exist, Scott will supplement its responses to reflect that. If some of these documents do exist, Scott shall either produce them or file a motion for a protective order accompanied by evidence about the nature of the burden associated with production.[4]

---

[4] A party claiming that a discovery request is unduly burdensome must present an affidavit or other evidence that specifically describes the process of obtaining the responsive documents or information and the time and expense

*v. Requests for Production 26 and 27*

Request for Production 26 asks for any kind of documentation that shows the origin of sweet potatoes which were not grown or produced on Scott Farms, and Request for Production 27 asks for any documents that show that a Scott worker performed any kind of work on those sweet potatoes. Mot. to Compel, Ex. 1, at 25–26; *see id.* at 11–12 (Instruction 28).

Scott has indicated to the court that many of these requested documents may not exist. If they do not exist, Scott will supplement its responses to reflect that. If some of these documents do exist, Scott shall either produce them or submit some evidence to the court as to why it would be an undue burden to produce them. If Scott feels that some of the requested documents should remain confidential, it may follow the steps provided in the previously entered protective order to shield those documents from public disclosure or further dissemination.

*vi. Request for Production 34*

Request for Production 34 asks for "[c]orporate tax returns filed with the Internal Revenue Service, NC Department of Revenue, and/or Florida Department of Revenue during any time relevant to this lawsuit." Mot. to Compel, Ex. 1, at 28. Plaintiffs have requested 1099 forms between Scott and its contract growers in response to this request. They have told the court that Scott agreed to produce these forms, but Plaintiffs have shown no evidence of such a promise. Given that the request does not seek the production of 1099 forms, this portion of the motion to compel is denied.

---

involved in responding to the request. *Cratty* v. *City of Wyandotte*, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017); *Shaw* v. *Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301–02 (S.D. Cal. 2015); *L–3 Commc'ns Corp.* v. *Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015); *In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 410–11 (N.D. Ohio 2011); *Convertino* v. *U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008).

## IV.    Award of Attorneys' Fees and Costs

The Plaintiffs have not moved for attorneys' fees in their Motion to Compel. Mot. to Compel. Even if they had, Federal Rule of Civil Procedure 37(a)(5)(A)(ii) gives the court some latitude to decide whether an award of attorneys' fees would be just if a motion is granted but "the opposing party's nondisclosure, response, or objection was substantially justified." Because this case involves an unsettled area of the law, making the outcome of the discovery disputes uncertain, the court finds that it would be unjust to award attorneys' fees to the Plaintiffs in this case. Therefore, both parties shall bear their own costs.

## V.    Conclusion

For the forgoing reasons, the court grants Scott's Motion to Amend.  D.E. 90. The court also grants Plaintiff's Motion to Compel in part and denies it in part. D.E. 71. Within 30 days of this order, Scott will supplement its discovery responses as outlined in this order.

Dated:  January 5, 2019

Robert T. Numbers, II
United States Magistrate Judge