IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-00356-FL

| | | |
|---|---|---|
| RICARDO MONDRAGON, | ) | |
| EUSTORGIO ESPINOBARROS | ) | |
| FELICIANO, JUAN CONTRERAS, | ) | |
| CUTBERTO ORTIZ HERNANDEZ, | ) | |
| RAMÓN ORTIZ HERNANDEZ, | ) | |
| ALEJANDRO JIMENEZ GONZALEZ, | ) | |
| RENATO ROMERO ACUÑA, JOSÉ | ) | ORDER |
| TAPIA, ANASTACIO LOPEZ SOLIS, | ) | |
| and ABDON QUIRASCO SIXTECO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT FARMS, INC., ALICE H. | ) | |
| SCOTT, LINWOOD H. SCOTT, JR., | ) | |
| LINWOOD H. SCOTT, III, DEWEY R. | ) | |
| SCOTT, JFT HARVESTING, INC., JUAN | ) | |
| F. TORRES, OASIS HARVESTING, | ) | |
| INC., and RAMIRO B. TORRES, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiffs' motion to withdraw Ramón Ortiz Hernandez

("Ramón Hernandez")[1] as a named plaintiff and class representative (DE 96), plaintiffs Renato

Romero Acuna ("Romero Acuña") and Abdon Quirasco Sixteco's ("Quirasco Sixteco") motion for

conditional certification of collective action under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. 216(b) (DE 98), and defendants Alice H. Scott, Dewey R. Scott, Scott Farms, Inc., Linwood

---

[1]The court refers to plaintiff Ramón Hernandez by first and last name to avoid confusion with plaintiff Cutberto Ortiz Hernandez.

H. Scott III, Linwood H. Scott, Jr.'s ("Scott defendants") motion to seal (DE 102). Also before the court are plaintiffs' objections to the magistrate judge's order granting Scott defendants leave to file their amended answer (DE 127). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, plaintiffs' motion for conditional certification is granted on the terms set forth herein. Scott defendants' motion to seal is granted on the terms set forth herein. Plaintiffs' motion to withdraw plaintiff Ramón Hernandez is denied without prejudice, and plaintiffs' objection to the magistrate judge's order granting Scott defendants leave to amend their answer fails.

## STATEMENT OF THE CASE

Plaintiffs initiated this action on July 17, 2017. Plaintiffs subsequently amended their complaint on September 5, 2017, December 8, 2017, and May 15, 2018. Plaintiffs assert several different causes of action against defendants, alleging various classes of plaintiffs have been harmed by wage and hour violations under the Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801, et seq., the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, et seq., and FLSA collective action, 29 U.S.C. § 216(b).

With regard to the FLSA collective action specifically, plaintiffs Eustorgio Espinobarros Feliciano ("Espinobarros Feliciano"), Juan Contreras ("Contreras"), Romero Acuña, and Quirasco Sixteco seek to bring a collective action pursuant to 29 U.S.C. § 216(b) of FLSA for back wages, liquidated damages, and attorneys' fees and costs for failing to pay overtime wages for work performed in excess of 40 hours in the same workweek when all or some part of those hours worked were not performed in connection with the farming operations of Scott Farms, Inc. (Compl. ¶¶ 5,

179-181).[2]  Defendants answered plaintiffs' amended complaints on October 13, 2017, again on January 12 and 15, 2018, again on June 4 and 12, 2018, and finally on January 8, 2019.[3]  In each instance, defendants denied liability to plaintiffs under FLSA.

Initially, the court's case management order in this matter set the discovery deadline in this case for December 31, 2018, and the motions deadline for March 19, 2019.  (Case Management Order (DE 47)).  Since then, the court has granted the parties consent motion to extend discovery to sixty days after the end of any opt in period set by the court or after denial of the motion to conditionally certify plaintiffs' FLSA collective action (Order (DE 120)).  The parties have also raised several discovery disputes in this matter, which the court most recently addressed in its order granting in part and denying in part plaintiffs' motion to compel.  (Order (DE 121)).

A.    Plaintiffs' Motion to Conditionally Certify the FLSA Action

In the meantime, following several months of discovery, plaintiffs Romero Acuña and Quirasco Sixteco filed the instant motion to conditionally certify the FLSA collective action on behalf of themselves and all others similarly situated.  (DE 98).  Together with the motion, plaintiffs submit their proposed notice to potential opt in plaintiffs ("Proposed Notice" (DE 98-1)); proposed consent to sue ("Proposed Consent" (DE 98-2)); and proposed order granting conditional certification ("Proposed Order" (DE 98-3)).

Plaintiffs argue that the they have met the "minimal burden" to establish their FLSA collective action should be certified, that plaintiffs and the putative collective action members are

---

[2]Plaintiffs Espinobarros Feliciano and Contreras did not move for certification of the FLSA collective action, and are therefore not discussed in the court's analysis of the instant motion.

[3]Defendants Alice H. Scott, Dewey R. Scott, Scott Farms, Inc., Linwood H. Scott III, Linwood H. Scott, Jr. filed a first amended answer with leave of court.  (See Order (DE 121); Scott Def. First Am. Answer (DE 123)).  Defendants JFT Harvesting, Inc, Oasis Harvesting, Inc., Juan F. Torres, Ramiro B. Torres did not file another amended answer after June 12, 2018.

3

similarly situated, and that "putative members of the Collective Action were subject to the same policy or practice: [d]efendants required employees to work in excess of 40 hours per week for a flat hourly rate without paying them the required premium for overtime hours, during workweeks in which they were entitled to the higher overtime rate." (Pl. Mem. (DE 99) at 4, 7). Plaintiffs also argue that their proposed notice is appropriate in this case, and should be distributed to the collective action members. (Pl. Mem. (DE 99) at 10). Finally, plaintiffs argue that defendants should be required to provide the names and contact information of potential collective action members to facilitate distribution of notice. (Pl. Mem. (DE 99) at 10).

In support of plaintiffs' motion, plaintiffs attach the declaration of plaintiff Romero Acuña (Romero Acuña Decl. (DE 99-1)), the declaration of plaintiff Quirasco Sixteco (Quirasco Sixteco Decl. (DE 99-2)), paystubs for plaintiff Romero Acuña (Romero Acuña Paystubs (DE 99-3)), and paystubs for plaintiff Quirasco Sixteco (Quirasco Sixteco Paystubs (DE 99-4)).

Scott defendants filed their response in opposition to the motion to conditionally certify (Scott Def. Resp. (DE 106)). Defendants JFT Harvesting, Inc., Juan F. Torres, Oasis Harvesting, Inc., and Ramiro Torres ("Torres defendants") filed their response in opposition as well, agreeing with the arguments advanced by Scott defendants and providing additional arguments. (Torres Def. Resp. (DE 107)). Defendants argue that the court should review the motion to conditionally certify the collective action under an "intermediate standard" because the parties have engaged in extensive discovery, plaintiffs are not similarly situated, distinct claims and classes preclude conditional certification, and finally, even if certification is proper, the content and format of plaintiffs' proposed notice is not appropriate. (See Scott Def. Resp. (DE 106) at 4-5). In support of their arguments, defendants attach: 1) plaintiff Romero Acuña's discovery responses (Romero Acuña Disc. (DE 106-2)); 2) plaintiff Quirasco Sixteco's discovery responses (Quirasco Sixteco Disc. (DE 106-3)); 3)

4

plaintiff Quirasco Sixteco deposition excerpts (Quirasco Sixteco Dep. (DE 106-4)); 4) plaintiff Romero Acuña deposition excerpts (Romero Acuña Dep. (DE 106-5); 5) defendant Juan Torres ("J. Torres") deposition excerpts (J. Torres Dep. (DE 106-6)); 6) Rolando Uribe ("Uribe") deposition excerpts (Uribe Dep. (DE 106-7)); 7) Employee wages by department (Redacted Wage Report (DE 106-8)); and 8) an email regarding discovery disputes (Disc. Email (DE 106-9)).

In their reply, plaintiffs argue that a lenient standard for evaluating plaintiffs' motions is appropriate, that even using an intermediate standard, plaintiffs and the putative collective action members are similarly situated, no individualized determination is necessary in order to determine for which weeks overtime is owed, and H2A works are properly included in the collective action. (See Pl. Reply (DE 111)). Plaintiffs also argue that notice to the collective action members is proper. (Pl. Reply (DE 111)). In further support of their position, plaintiffs attach additional discovery correspondence (Jackson Email (DE 111-1)), the Uribe Deposition (Uribe Dep. (DE 111-2), the deposition of defendant JFT Harvesting (JFT Harvesting Dep. (DE 111-3)), the deposition of defendant Oasis Harvesting (Oasis Harvesting Dep. (DE 111-4)), and correspondence regarding proposed notice (Notice Correspondence (DE 111-5)).

B.      Scott Defendants' Motion to Seal

Scott defendants filed the instant motion to seal its employee wage reports by department, which appear to be intended as a fifth exhibit in support of plaintiffs' motion to conditionally certify the collective action in this case. (See Prop. Sealed Ex. (DE 101)). Scott defendants contend that this exhibit should be sealed pursuant to terms of the consent protective order entered December 7, 2017, because such materials are confidential documents containing pay information. Defendants alternatively request that the names of all non-party individuals should be redacted. (Def. Mot. To Seal (DE 102)). Finally, Scott defendants argue the motion to seal overcomes the common law

5

plaintiff Quirasco Sixteco deposition excerpts (Quirasco Sixteco Dep. (DE 106-4)); 4) plaintiff Romero Acuña deposition excerpts (Romero Acuña Dep. (DE 106-5); 5) defendant Juan Torres ("J. Torres") deposition excerpts (J. Torres Dep. (DE 106-6)); 6) Rolando Uribe ("Uribe") deposition excerpts (Uribe Dep. (DE 106-7)); 7) Employee wages by department (Redacted Wage Report (DE 106-8)); and 8) an email regarding discovery disputes (Disc. Email (DE 106-9)).

In their reply, plaintiffs argue that a lenient standard for evaluating plaintiffs' motions is appropriate, that even using an intermediate standard, plaintiffs and the putative collective action members are similarly situated, no individualized determination is necessary in order to determine for which weeks overtime is owed, and H2A works are properly included in the collective action. (See Pl. Reply (DE 111)). Plaintiffs also argue that notice to the collective action members is proper. (Pl. Reply (DE 111)). In further support of their position, plaintiffs attach additional discovery correspondence (Jackson Email (DE 111-1)), the Uribe Deposition (Uribe Dep. (DE 111-2), the deposition of defendant JFT Harvesting (JFT Harvesting Dep. (DE 111-3)), the deposition of defendant Oasis Harvesting (Oasis Harvesting Dep. (DE 111-4)), and correspondence regarding proposed notice (Notice Correspondence (DE 111-5)).

B.      Scott Defendants' Motion to Seal

Scott defendants filed the instant motion to seal its employee wage reports by department, which appear to be intended as a fifth exhibit in support of plaintiffs' motion to conditionally certify the collective action in this case. (See Prop. Sealed Ex. (DE 101)). Scott defendants contend that this exhibit should be sealed pursuant to terms of the consent protective order entered December 7, 2017, because such materials are confidential documents containing pay information. Defendants alternatively request that the names of all non-party individuals should be redacted. (Def. Mot. To Seal (DE 102)). Finally, Scott defendants argue the motion to seal overcomes the common law

presumption of access to judicial records. (Def. Brief (DE 103)). In support of Scott defendants' motion, they attach discovery correspondence (Disc. Correspondence (DE 103-1)), plaintiffs' counsel's objection to confidential designation (Pl. Obj. (DE 103-2)), and plaintiffs' counsel's rejection of proposed redaction of documents that are the subject of the motion to seal (Pl. Correspondence (DE 103-3)).

Plaintiffs responded in opposition to the motion to seal, arguing that the documents plaintiffs seek to attach in support are not confidential under the terms of the consent protective order. (Pl. Resp. (DE 105)). Plaintiffs further argue that defendants fail to overcome the common law presumption of access to payroll documents attached to a motion for conditional certification. (Pl. Resp. (DE 105) at 7). Plaintiffs do not address whether redaction is a viable alternative to sealing in resolving the instant motion.

C.    Plaintiffs' Motion to Withdraw Ramón Hernandez

Finally, plaintiffs filed the instant motion to withdraw plaintiff Ramón Hernandez as named plaintiff and proposed class representatives without prejudice. (DE 96). Plaintiffs argue that plaintiff Ramón Hernandez is no longer living in North Carolina and is unable to effectively participate in the case as a potential class representative. (Pl. Mem. (DE 97)). Plaintiffs argue that plaintiff Ramón Hernandez should be allowed to continue as an absent class member should plaintiffs prevail. (Pl. Mem. (DE 97)). In support of the motion, plaintiffs filed the declaration of Carol Brooke (Brooke Decl. (DE 97-1)).

Scott defendants filed their response in opposition to the motion to withdraw plaintiff Ramón Hernandez as named plaintiff and proposed class representative without prejudice. (Scott Def. Resp. (DE 104)). Scott defendants argue that Federal Rule of Civil Procedure 15 is the appropriate rule under which to decide this issue, defendants would be prejudiced if plaintiff Ramón Hernandez is

6

permitted to withdraw without plaintiffs amending their complaint, and plaintiff's motion to withdraw plaintiff Ramón Hernandez may be improper because plaintiff's counsel may have lost contact with plaintiff Ramón Hernandez. (See Scott Def. Resp. (DE 104)). In support of Scott defendants' response, they attach several pieces of email correspondence (Email Correspondence (DE 104-2 - 104-6)), the deposition of plaintiff Ramón Hernandez (Ramón Hernandez Dep. (DE 104-7)), and a North Carolina ethics opinion (Ethics Opinion 223 (DE 104-8)).

Plaintiffs reply in opposition, arguing that withdrawing as counsel for plaintiff Ramón Hernandez would be improper, that plaintiff Ramón Hernandez has not indicated he wishes plaintiff's counsel to withdraw, and that counsel was acting in plaintiff Ramón Hernandez's best interests. (Pl. Reply (DE 109)). In further support of plaintiffs' motion, plaintiffs attach the second declaration of Carol Brooke (Second Brooke Decl. (DE 109-1)).

D.      Appeal of Magistrate Judge's Order on Motion to Amend

In his order dated January 5, 2019, the magistrate judge granted defendants leave to amend their answer. (Order (DE 121)). The magistrate judge found good cause for Scott defendants' failure to timely amend their answer, and found that plaintiffs would not be prejudiced by an amendment of the answer. Plaintiffs object to these findings on the grounds that both are clearly erroneous. (Pl. Obj. (DE 127)). Scott defendants filed their response in opposition to plaintiffs' objections, together with an email from counsel. (Def. Resp. (DE 128)).

## STATEMENT OF FACTS

The facts alleged in the complaint[4] pertinent to the motion for conditional certification may

---

[4] Hereinafter, all references to the "complaint" in the text and to "Compl." in citations are to the third amended complaint filed May 15, 2018 (DE 58), unless otherwise specified.

be summarized as follows. Scott defendants own and operate a farm and processing establishment that recruits, hires, employs, furnishes, or transports migrant or seasonal agricultural workers. (Compl. ¶ 15). Defendant Scott Farms, Inc., the corporate entity, produces and markets tobacco, sweet potatoes, and other agricultural products; defendants Linwood H. Scott, Jr., Alice H. Scott, Linwood H. Scott, III, and Dewey R. Scott are all officers and operators of Scott Farms. (See id. ¶¶ 8-11).

Defendants JFT Harvesting, Inc., and Oasis Harvesting, Inc., are companies that recruit, solicit, hire, employ, furnish, or transport migrant or seasonal agricultural workers; defendant Juan F. Torres is president of defendant JFT Harvesting, Inc., while Ramiro B. Torres is president of defendant Oasis Harvesting, Inc. (See id. ¶¶ 33-38). Torres defendants' directed, controlled, and supervised the work of the H-2A workers who performed work exclusively for defendant Scott Farms in the files and packing house of defendant Scott Farms. (Id. ¶ 39).

Plaintiff Romero Acuña began working for the Scott defendants in approximately 2006 and is still employed there. (Compl. ¶ 115). His duties include spraying herbicides in the sweet potato and tobacco fields, digging up sweet potatoes, and driving a forklift. (Id.). On occasion during the time period relevant to the complaint, plaintiff Romero Acuña worked packing sweet potatoes alongside H-2A workers. (Id. ¶ 116). Plaintiff Romero Acuña was paid $8.00 per hour in 2016, and currently earns $9.25 per hour on some days, and $11.27 per hour on other days. (Id. ¶ 118).

Plaintiff Quirasco Sixteco began working for the Scott defendants in approximately 1999 and is still employed there. (Id. ¶ 127). His job is to work in the Scott Farms sweet potato fields and packing house. (Id.). Plaintiff Quirasco Sixteco drives a forklift to unload boxes of sweet potatoes from trucks driven by H-2A workers. (Id. ¶ 129). Plaintiff Quirasco Sixteco also drives a tractor for the planting of sweet potatoes, harvesting sweet potatoes, and processing and packing sweet

8

potatoes. (Id.). Plaintiff Quirasco Sixteco was paid $10.00 per hour in 2016, and currently earns $10.00 per hour some days and $11.27 on other days. (Id. ¶ 130).

Neither plaintiff Romero Acuña nor plaintiff Quirasco Sixteco were recruited by defendants to work under H-2A clearance orders in 2014, 2015, 2016, or 2017. (Id. ¶¶ 117, 128). However, in addition to hiring local seasonal agricultural workers, Scott defendants used Torres defendants to find additional laborers through the H-2A visa program. (See id. ¶¶ 48-55). Scott defendants began using Torres defendants' services at some point prior to the 2013 agricultural season, in order to assist with growing and harvesting sweet potatoes. (Id. ¶ 49). Torres defendants obtained clearance orders for workers in 2014, 2015, 2016, and 2017 to work exclusively at Scott defendants' facilities. (See id. ¶¶ 56-72).

Plaintiffs Romero Acuña and Quirasco Sixteco seek to bring a collective action under FLSA for work performed by themselves and other employees similarly situated who unloaded, packed, or processed sweet potatoes that work or are produced by person(s) or entities other than defendants. (Id. ¶ 167). Plaintiffs Romero Acuña and Quirasco Sixteco allege that they and other employees were required to work over time hours and were willfully not paid at the appropriate hourly overtime rate by Scott defendants and Torres defendants. (Id. ¶¶ 167-69).

Additional facts pertinent to the instant motions will be discussed below.

## COURT'S DISCUSSION

A.    Plaintiffs' Motion to Conditionally Certify

Plaintiffs Romero Acuña and Quirasco Sixteco seek, and defendants oppose, the conditional certification of a collective action under the Fair Labor Standards Act ("FLSA").

An action to recover the liability prescribed [by FLSA] may be maintained against

> any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "There are two requirements for maintenance of a class action under the FLSA: the plaintiffs in the proposed class must be 'similarly situated;' and they must opt in by filing their consent to sue with the court." See id. To determine if conditional certification is appropriate in this case, the court begins by analyzing the working conditions of plaintiffs Romero Acuña, Quirasco Sixteco, and their co-workers, turns to the issues of joint employer and independent contractor status, and finally addresses whether notice is appropriate in this case.

1.     Working Conditions of Plaintiffs and Coworkers

The Fourth Circuit has not announced a test for determining if employees are similarly situated. However, courts in this district have held that, "to be similarly situated for purposes of § 216(b), persons must raise a similar legal issue as to . . . nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017) (quotations omitted) (collecting cases). Certification of a collective action under FLSA proceeds in two steps: "[1] the court conditionally certifies the class based on the limited record before it and approves notice to putative class members of their right to opt in. [2] The final determination on certification is made later, typically after discovery, when the court has available to it substantially more information." Id. (internal citations omitted).

Plaintiffs Romero Acuña and Quirasco Sixteco seek conditional certification of a collective action for themselves and similarly situated employees

10

who, during the three year period prior to the date on which such person files a
Consent to Join in this action pursuant to 29 U.S.C. § 216(b), and ending with the
date final judgment is entered, were not paid at the required overtime wage rate when
they worked more than 40 hours in any workweek unloading, storing, packing,
and/or processing sweet potatoes in the storage facilities or packinghouses of the
Scott [d]efendants when any part of that work involved sweet potatoes that were and
are produced by person(s) or entities other than the Scott [d]efendants.

(Mot. To Conditionally Certify (DE 98) ¶ 1) ("FLSA Collective Action"). Here, the proposed FLSA

Collective Action presents a common question applicable to all potential plaintiffs: did "any part of

that work involve[] sweet potatoes that were and are produced by person(s) or entities other than the

Scott [d]efendants[?]" Id. This common question directly implicates whether the exemption from

FLSA overtime provisions for agricultural work pursuant to 29 U.S.C. § 213(b)(12) is applicable,

or if plaintiffs are entitled to overtime pay pursuant to 29 U.S.C. § 207(a)(1). See De Luna-Guerrero

v. N. Carolina Grower's Ass'n, Inc., 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) ("[P]laintiffs must

raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime

arising from at least a manageably similar factual setting."). At this stage, plaintiffs have presented

some evidence that all employees worked on the sweet potatoes from one grower at a time on any

given day, and everyone worked the same hours. (See Uribe Dep. (DE 111-2) 17:22-18:3; 38:9-11;

39:19-23). Moreover,

> [w]here an employee in the same workweek performs work which is exempt under
> one section of the Act and also engages in work to which the Act applies but is not
> exempt under some other section of the Act, he is not exempt that week, and the
> wage and hour requirements of the Act are applicable.

29 C.F.R. § 780.11.

Based on the limited facts before the court, the record shows that if plaintiffs establish that

sweet potatoes other than those grown by Scott Farms were processed, then establishing a wage and

hour violation for each plaintiff involved in processing the sweet potatoes does not require an

11

individualized inquiry.  See Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1048 (2016) (holding statistical evidence that may be used to address all plaintiffs' claims in a FLSA collective action); De Luna-Guerrero, 338 F. Supp. 2d at 654 ("Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination."); see also (Redacted Wage Report (DE 106-8) (identifying the number of hours worked by each worker on a weekly basis).

Scott defendants' business records also identify under "job ID" where workers performed work presumably subject to this action, with designations such as sweet potato house ("Swphouse"), sweet potato storage ("Swp storage"), as opposed to other work, such as sweet potato field work ("swpfieldwo2").  (See, e.g., Redacted Wage Report (DE 106-8)).  On the face of such records, the court can determine the type of work performed by plaintiffs without resorting to individualized inquiry.

Furthermore, pursuant to the court's order granting the parties' consent motion to extend discovery, additional facts remain to be elucidated as to the FLSA Collective Action.  As this stage in the proceeding, the court is satisfied that plaintiffs and their proposed group of employees are in a manageably similar factual situation with regard to defendants' alleged policy not to pay overtime for work in excess of forty hours in a week.  See Rosinbaum, 238 F. Supp. 3d at 743.

Scott defendants argue that the working conditions at Scott Farms are not manageably similar for several reasons.  First, Scott defendants assert that individualized inquiries preclude a collective action.  Some of the inquiries they raise include 1) whether, and in which weeks, each putative plaintiff performed work unloading, storing, packing, or processing sweet potatoes in the storing facilities or packing houses; 2) whether, and in which weeks, each putative plaintiff worked more than forty hours in a single workweek when performing work unloading, storing, packing, and/or

12

processing sweet potatoes in the storing facilities or packinghouse; and 3) whether, and in which weeks, each putative plaintiff was not paid at the appropriate overtime rate. (Def. Resp. (DE 106) at 9-10). As discussed above, however, these inquiries may be easily resolved by consulting Scott defendants' business records, and therefore do not make an individualized inquiry necessary. See Tyson Foods, 136 S. Ct. at 1048; (Redacted Wage Report (DE 106-8).

Scott defendants raise other individualized inquiries regarding whether employees worked on sweet potatoes not produced by Scott defendants, such as 1) whether, and in which weeks, each putative plaintiff performed work . . . involving sweet potatoes not produced by the Scott defendants; and 2) how many hours of work each week, if any, each putative plaintiff spent on work involving sweet potatoes not produced by the Scott defendants, as opposed to other activities. (Def. Resp. (DE 106) at 9-10). These considerations do not require individualized inquiry sufficient to defeat conditional certification either. On the limited record before the court, plaintiff has presented evidence that all employees worked on the sweet potatoes from one grower at a time, only making it necessary to determine whose sweet potatoes were being packed at a given time. (See Uribe Dep. (DE 111-2) 17:22-18:3; 38:9-11; 39:19-23). Additionally, the agricultural exemption does not apply to employees in workweeks in which they performed work on sweet potatoes not produced by Scott Farms. See 29 C.F.R. § 780.11 (citing Marshall v. Gulf & Western Industries, Inc., 552 F.2d 124, 126 (5th Cir. 1977)). Therefore, the number of overtime hours employees worked on sweet potatoes not produced by Scott defendants does not require individualized inquiry.

Defendants also argue that several different factual distinctions make employees not similarly situated, including 1) having different supervisors, 2) having different job duties, 3) working in the packing house and storage facilities as distinct locations, and 4) some employees already being paid overtime. (Scott Def. Resp. (DE 106) at 13-15). Scott defendants have failed

13

to articulate how the central factual issue, working on sweet potatoes not produced by Scott Farms, does not render these differences moot for purposes of the FLSA Collective Action. Moreover, as discussed above, the issue of whether employees have already been paid overtime does not defeat conditional certification. See De Luna-Guerrero, 338 F. Supp. 2d at 654. Consequently, the court rejects defendants' arguments at this stage in the case.

The working conditions in this case present a manageably similar factual situation for conditional certification of the FLSA Collective Action. Before concluding that plaintiffs' proposed FLSA Collective Action should be conditionally certified however, the court also evaluates whether plaintiffs present sufficient evidence of joint employment and employee status.

2.     Joint Employment and Employee Status

The parties dispute whether plaintiffs have produced evidence sufficient to show that plaintiffs were jointly employed by the Scott defendants and Torres defendants, and whether the H-2A workers, which plaintiffs seek to join in this action, are independent contractors not subject to FLSA.

The Fourth Circuit has established "a two-step framework for analyzing FLSA joint employment claims." Salinas v. Commercial Interiors, Inc., 848 F.3d 125, 139–40 (4th Cir. 2017) (citing Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 307 (4th Cir. 2006)). "[C]ourts must first determine whether two entities should be treated as joint employers." Salinas, 848 F.3d at 139–40. In determining if defendants are joint employers, the fundamental question is whether defendants "share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment." Id. at 141. In answering this question, the court considers several inclusive factors:

1) Whether, formally or as a matter of practice, the putative joint employers jointly

14

determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means; (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment; (3) The degree of permanency and duration of the relationship between the putative joint employers; (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer; (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

Id. at 141–42; Hall v. DIRECTV, LLC, 846 F.3d 757, 769–70 (4th Cir. 2017), cert. denied, 138 S. Ct. 635 (2018). "[T]he absence of a single factor—or even a majority of factors—is not determinative of whether joint employment does or does not exist. Hall, 846 F.3d at 770 (internal citations omitted).

After making a determination as to whether defendants are joint employers, the court must "then analyze whether the worker constitutes an employee or independent contractor of the combined entity, if they are joint employers, or each entity, if they are separate employers." Id. at 139–40. The court evaluates whether plaintiffs are employees or independent contractors for purposes of FLSA based on six factors:

(1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

Schultz, 466 F.3d at 304–05 (citing United States v. Silk, 331 U.S. 704 (1947)).

Plaintiffs present sufficient evidence at this stage in the case to show that the H-2A workers

15

in this case are jointly employed by the Scott defendants and the Torres defendants. Scott defendants direct the Torres defendants where to send the H-2A workers and what work they need to be doing, and decide when H-2A workers will work in the sweet potato packinghouse and how many H-2A workers should do that work. (See JFT Harvesting Dep. (DE 111-3) 91:8-17, 124:9-17, 132:23-133:13; Oasis Harvesting Dep. (DE 111-4) 30:9-18, 36:3-8). Scott defendants jointly share in the power of the Torres defendants to hire H-2A workers by instructing Torres defendants on how many workers to hire, determining the H-2A workers' dates of employment, and paying in full or in part the visa and transportation costs associated with bringing the H-2A workers to North Carolina. (See JFT Harvesting Dep. (DE 111-3) 45:1-46:18, 53:6-21, 63:13-65:15, 165:11-16; Oasis Harvesting Dep. (DE 111-4) 123:3-124:5, 129:15-130:25). Torres defendants and the H-2A workers they employ only work with Scott Farms, indicating a degree of permanency in the relationship between the Torres defendants and the Scott defendants. (See JFT Harvesting Dep. (DE 111-3) 16:6-18; Oasis Harvesting Dep. (DE 111-4) 124:6-14).

The H-2A workers hired by Torres defendants perform tasks in the packinghouses and storage facilities owned and controlled by Scott defendants. (See JFT Harvesting Dep. (DE 111-3) 72:16-21, 121:9-12). Additionally, Scott defendants share the ordinary tasks of an employer with Torres defendants by providing the H-2A workers with the facilities, equipment, tools, or materials necessary to complete the work. Tractors and other machinery are provided by Scott Farms, Scott Farms addresses problems with machinery used by the workers, Scott Farms provides Torres defendant with training materials for the H-2A workers, and Scott Farms even pays to house the H-2A workers. (See JFT Harvesting Dep. (DE 111-3) 40:18-41:4, 68:14-21, 114:15-115:2; Oasis Harvesting Dep. (DE 111-4) 29:3-6). Based on these facts, Scott defendants and Torres defendants "share, agree to allocate responsibility for, or otherwise codetermine—formally or informally,

16

directly or indirectly—the essential terms and conditions of the worker's employment." <u>Salinas</u>, 848 F.3d at 141. Therefore, Scott defendants and Torres defendants jointly employ the H-2A workers. Taking the record as a whole at the conditional certification stage, plaintiffs have provided some evidence of joint employment of the plaintiffs in the putative FLSA Collective Action.[5]

Both the Scott defendants and the Torres defendants have admitted that all the individuals sought to be joined to the FLSA Collective Action are employees of at least one of the defendants. Regarding the named plaintiffs, Scott defendants admit "that Scott Farms, Inc. employed each of the named Plaintiffs in this action at some time between July 1, 2014 and today." (Scott Def. First Am. Answer (DE 123) ¶ 12)). Similarly, both the Scott defendants and the Torres defendants admit the "that the corporate entities JFT Harvesting, Inc. and Oasis Harvesting, Inc. were employers of H-2A workers and U.S. workers in corresponding employment, as defined in the H-2A regulations, during specific periods of temporary labor certification within various years." (Torres Def. Answer (DE 64) ¶ 25; <u>see</u> Scott Def. First Am. Answer (DE 123) ¶ 25). Torres defendants further admit "that corporate entities JFT Harvesting, Inc. and Oasis Harvesting, Inc. each have a place of business in the U.S., a means to be contacted for employment, the ability to control the work of the H-2A workers and workers in corresponding employment, and valid Federal Employer Identification Numbers." (Torres Def. Answer (DE 64) ¶ 25; <u>see also</u> Scott Def. First Am. Answer (DE 123) ¶ 25). These admissions alone are sufficient at the conditional certification stage to find that plaintiffs and those they seek to join in the FLSA Collective Action are employees, rather than independent

---

[5]Plaintiffs Romero Acuña and Quirasco Sixteco do not allege they are H-2A workers, and state they are employed by defendant Scott Farms. (Compl. ¶¶ 115, 117, 127, 128; Romero Acuña Decl. (DE 98-1) ¶ 6; Quirasco Sixteco Decl. (DE 99-2) ¶ 6). Should defendants move for decertification of the collective action, plaintiffs will be required to come forward with additional facts showing how local employees of Scott defendants who were not H-2A workers were jointly employed by Torres defendants. Absent further evidence, a subclass or decertification may become necessary later in this case.

contractors.

Scott defendants argue that the employees are not similarly situated because they do not share the same direct employer. (Scott Def. Resp. (DE 106) at 13). For the reasons stated above, plaintiffs have carried their burden to show joint employment at the conditional certification stage. Torres defendants also argue that there is no evidence that H-2A workers employed by Torres defendants "ever packed sweet potatoes not produced by Scott Farms" and therefore the collective action should not be conditionally certified. (Torres Def. Resp. (DE 107) at 3). Torres defendants' response in opposition begs the central factual question of the FLSA Collective Action. Defendants have admitted that H-2A workers worked in the sweet potato packinghouse in 2015 and 2016. (Torres Def. Answer (DE 64) ¶ 86; Scott Def. First Am. Answer (DE 123) ¶ 86). The court leaves for a later day the issue of if and when defendant Scott Farms had its employees, including those jointly employed by the Torres defendants, process sweet potatoes produced by other growers.

In sum, plaintiffs have shown sufficient evidence of joint employment for the case to proceed through conditional certification. Therefore, putative plaintiffs in the FLSA Collective Action are similarly situated to the named plaintiffs. Conditional certification of the FLSA Collective Action is granted. The court turns to whether the proposed notice in this case is appropriate.

      3.     Notice

         a.     Content

The benefits of a FLSA collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." Id. at 172; see also Shaffer v. Farm Fresh, Inc., 966 F.2d 142,

18

147 (4th Cir. 1992).

Defendants challenge the time period for which plaintiffs seek notice. They argue that the statute of limitations in a collective action runs backward from the date each opt-in plaintiff files his or her consent to join the lawsuit. 29 U.S.C. §§ 255, 256. Plaintiffs do not disagree with this contention. Therefore, the proposed notice should be amended to state: "if you worked at the Scott Farms sweet potato packinghouse or sweet potato storage facility any time in three years immediately preceding the date of this notice . . ." instead of "if you worked at Scott Farms between December 8, 2014 and the present . . . ." (Proposed Notice (DE 98-1). The notice should also be dated.[6]

Defendants also argue that the proposed notice is overbroad because the broad collective action definition included in the notice would include employees exempt from overtime requirements. Plaintiff argues that notice is proper because the burden to prove an exemption lies with defendants, therefore all employees working in the sweet potato packinghouse and storage facilities are properly included. (Pl. Reply (DE 111) at 9 (citing Clark v. J.M. Benson Co., Inc., 789 F.2d 282, 286 (4th Cir. 1986))).

Plaintiffs' proposed collective action is for employees who did work involving sweet potatoes "when any part of that work involved sweet potatoes that were and are produced by person(s) or entities other than the Scott Defendants." (Mot. to Cond. Certify (DE 98) ¶ 1). Since plaintiffs have chosen to proceed with such a collective action, the collective action allegations containing the notice should mirror the language of the conditionally certified collective action, so prospective plaintiffs "can make informed decisions about whether to participate." Hoffmann-La

---

[6]The date on the notice should be the date the court gives final approval of the notice.

Roche, 493 U.S. at 170. Accordingly, the sentence beginning with "[t]hey did not get overtime pay . . ." should include at the end ". . . not produced by defendants."[7] (Proposed Notice (DE 98-1).

Defendants argue that the notice should only address work performed at the sweet potato packinghouse, not the sweet potato storage facilities. Plaintiffs argue that it is proper to include work performed in the sweet potato storage facilities, since overtime work was also performed in that location when no exemption applied. For the reasons discussed above, the court has conditionally certified a collective action which includes workers at the sweet potato packinghouse, as well as the sweet potato storage facility. However, the notice does not indicate anywhere that the FLSA Collection Action is only for those workers who worked in the sweet potato packinghouse or storage facilities. (Proposed Notice (DE 98-1)). Therefore, plaintiffs must add language to the notice indicating only workers who worked in those locations are part of the collective action. Appropriate language is included above in the court's discussion above of the applicable time period for the notice.

Defendants argue that the portion of the notice saying putative plaintiffs will not have to pay the lawyers anything out of pocket is misleading, and suggest that the notice should disclose to potential opt in plaintiffs what fees will be owed if a settlement or verdict is reached. (Def. Reply (DE 106) at 19). Plaintiffs' counsel acknowledges that any fees that might be awarded related to the FLCA Collective Action will be pursuant to 29 U.S.C. § 216(b), not a contingency fee arrangement. (Pl. Reply (DE 111) at 10). In light of this statement, the notice is not misleading to say that plaintiffs will not have to pay plaintiffs' counsel anything out of pocket, win or lose. However, prospective plaintiffs must be made aware that they are potentially liable for some portion

---

[7]The court also notes a typo where counsel's proposed notice says "packing" instead of "packed."

20

of defendants' costs if defendants should prevail in the action.  See Hoffmann-La Roche, 493 U.S. at 170.  Plaintiffs must include language which makes opt-in plaintiffs aware of this risk.

Defendants next assert that the language regarding what happens if prospective plaintiffs do not file a claim is misleading because prospective plaintiffs could still receive money from this lawsuit if one of the other classes alleged in this lawsuit is certified.  The court rejects this argument because such a putative class has not been certified in this case.  Additionally, a class action has its own notice requirements, which prevent putative class members from being misled as to their rights.  See Fed. R. Civ. P. 23(c).  Since the notice explains that a potential opt in plaintiff in the FLSA Collective Action would not receive money by not opting in, and that potential opt in plaintiffs could elect to sue on their own under FLSA, the statement is not misleading.

Next, defendants argue the statement "[t]he longer you wait to file, the less money you will be allowed to claim" is overbroad and misleading and should be excluded.  (Scott Def. Resp. (DE 106) at 21 (citing Proposed Notice (DE 98-1) at 2)).  Since the statute of limitations for an action runs from when a prospective plaintiff files their consent to sue, it is reasonable to inform them that portions of their claim might be time barred.  See 29 U.S.C. §§ 255, 256.  However, defendants are correct that the notice is misleading because the statute of limitations may or may not affect a potential opt in plaintiff's recovery.  Accordingly, plaintiffs must revise the portion of the notice which reads "[t]he longer you wait to file, the less money you will be allowed to claim," and replace it with the following language: "[t]he statute of limitations in your case depends upon the date on which you file the attached consent to sue."

Defendants next argue that plaintiffs' proposed notice fails to explain the potential obligations of opt in plaintiffs to participate in discovery and trial.  (Scott Def. Resp. (DE 106) at 21).  Plaintiffs propose that the collective action notice reflect that the putative plaintiffs' potential

21

discovery obligations will be determined by the Court. (Pl. Reply (DE 111) at 10). Plaintiffs' proposal fairly addresses defendants' concern, and therefore plaintiffs should incorporate such language into an amended proposed notice.

Defendants argue that plaintiffs' proposed notice is also misleading because the emphasized language "COURT NOTICE OF YOUR RIGHT" implies judicial endorsement. (See Proposed Notice (DE 98-1) at 2) (emphasis omitted). Plaintiffs do not respond to this argument. In the interest of avoiding "the appearance of judicial endorsement of the merits of the action," Hoffman-La Roche, 493 U.S. at 174, plaintiffs must strike the word "COURT" from the top line of the proposed notice. Together with the bolded language at the bottom of the notice, such a change avoids the appearance of judicial endorsement.

Finally, defendants argue that the notice is misleading because it does not provide an accurate description of the case. Scott defendants suggest that a general denial is not specific enough to inform potential opt in plaintiffs as to the defenses in this action, and ask that the court permit them to draft a description of their position to include in the notice. (Scott Def. Resp. (DE 106) at 23). Plaintiffs do not state a position as to this objection. Accordingly, plaintiffs are directed to amend the proposed notice to include a short summary of defendants' contentions as to why they are not liable under FLSA.

Within 14 days of the date of this order, plaintiffs shall submit to the court an amended proposed notice which incorporates the changes discussed above, providing both English and Spanish versions of the amended proposed notice. Defendants will have 7 days to raise any objections to the language of this amended proposed notice. The parties are encouraged to confer and resolve any differences in wording before submission of the amended proposed notice to the court.

b. Method of Distribution

Plaintiffs propose that the notice in this case be translated in to Spanish, and distributed to potential opt in plaintiffs in both English and Spanish.  Plaintiffs also propose distributing the notice by mail, by notice at the sweet potato packinghouse and H-2A worker housing, and together with employees' paychecks.  Defendants have no objection to distributing the notice in both English and Spanish and distributing it by U.S. Mail.  Defendants object to posting the notice at the sweet potato packinghouse and H-2A worker housing, as well as sending the notice together with employees' paychecks.

Notice in this case may be distributed in both English and Spanish.  Additionally, the court approves distribution of notice by U.S. Mail.  Posting notice of this lawsuit inside Scott defendants' sweet potato packinghouse and H-2A worker housing would likely advance the notice's purpose of ensuring that potential collective action plaintiffs are made aware of their right to join this action.  See Rosinbaum, 238 F. Supp. 3d at 748.  Therefore, plaintiff's request for permission conspicuously to post notices in Scott defendants' sweet potato packinghouse and H-2A worker housing is granted.

However, the court does not grant plaintiffs' request to distribute notice together with employee paychecks.  Requiring defendants to provide notice in this manner is unnecessary and unduly burdensome, because plaintiffs are already allowed to reach out to potential opt in plaintiffs through the mail and through notices posted on Scott defendants' premises.  Consequently, plaintiffs may only distribute notice through the channels described above.

c. Time to File

Plaintiffs ask for a period of six months within which to distribute notice and file opt in consent forms with the court, beginning from the date on which defendants provide plaintiffs with requested information to contact other prospective opt in plaintiffs.  (Pl. Mem. (DE 99) at 13).

23

Plaintiffs reason that, since some putative plaintiffs may reside in Mexico, a longer opt in period is warranted. (Pl. Mem. (DE 99) at 13). Defendants argue that the opt in period should be limited to between 30 and 60 days. (Scott Def. Resp. (DE 106) at 23-24).

A six month opt in period would needlessly delay adjudication of this lawsuit. However, the court also takes in to account plaintiffs' arguments that some putative plaintiffs reside outside the United States. The Federal Rules of Civil Procedure provide for 90 days to serve a party in an action or answer a pleading following a request for waiver to a party outside the United States. Fed. R. Civ. P. 4(d)(3), 4(m). Thus, in prosecuting an action, the Federal Rules anticipate a 90 day period to be sufficient to obtain a response from an individual outside the United States. Accordingly, the court sets a 90 day opt in period, which will begin when the court approves plaintiffs' amended proposed notice with the revisions required above.

d. Motion to Compel Contact Information

By the same document constituting their motion for conditional certification, plaintiffs moved the court compel production of identifying and contact information for putative plaintiffs in this case. Therefore, the court construes relevant portions of the third numbered paragraph of plaintiffs' motion for conditional certification (DE 98) as a motion to compel production of documents, which motion is granted in part and denied in part. Defendants shall provide identifying and contact information for members of the collective action herein conditionally certified to plaintiffs within 14 days of the date of entry of this order by an electronic data file. The data file shall include the full name, employee ID, job title, location of employment, last known local and international mailing addresses, and local and international phone numbers of all individuals who worked in the sweet potato packinghouse or sweet potato storage facilities for defendants any time during the three years preceding entry of this order.

24

4.        Supplemental Jurisdiction

Scott defendants argue in their response in opposition that plaintiffs' state law claims should be dismissed by the court declining to exercise supplemental jurisdiction.

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action for lack of subject matter jurisdiction.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

In this district, "[a]ll motions shall be concise and shall state precisely the relief requested. Motions shall conform to the general motions requirements, standards and practices set forth in the applicable Federal Rules of Civil Procedure and in Local Civil Rule 10.1." Local Civil Rule 7.1(b); see also Fed. R. Civ. P. 7(b).  One requirement is that, "if applicable, [the party] state the title of the pleading, motion, discovery procedure or document and the federal statute or rule number under which the party is proceeding." Local Civil Rule 10.1(e). Additionally, "all motions made, other than in a hearing or trial, shall be filed with an accompanying supporting memorandum in the manner prescribed by Local Civil Rule 7.2(a)."  Local Civil Rule 7.1(e).

Here, defendants have attempted to embed a motion to dismiss for lack of subject matter jurisdiction in their response in opposition to the motion for conditional certification.  Such purported motion violates the Local Rules concerning motion practice in this district, and accordingly the court will not consider it.  Defendants must file an appropriate motion, together with supporting memorandum on the issue of subject matter jurisdiction.  The court will consider the motion once fully briefed and ripe for adjudication.

B.        Motion to Seal

Scott defendants move to seal an unredacted copy of the department wage report pages,

25

which includes payroll information for employees not currently parties to this action. (Prop. Sealed Ex. (DE 101)).

The protective order issued by the court states that the parties may seek enforcement of the consent protective order by filing a motion to seal, which will be analyzed by the court under the appropriate common law or First Amendment standards. (See Protective Order (DE 37) ¶¶ 7, 8). Since such standards apply to any motion to file information under seal, the court does not reach the issue of whether departmental wage reports may be designated confidential under the protective order, as it is irrelevant to the ultimate issue of whether permanently sealing the proposed sealed exhibit is appropriate.

"The right of public access [to court records] derives from two independent sources: the First Amendment and the common law." In re U.S. for an Order Pursuant to 18 U.S.C. § 2703(D), 707 F.3d 283, 290 (4th Cir. 2013)." The public has a First Amendment right of access to these documents submitted in conjunction with a dispositive motion. See Va. Dep't of State Police v. Washington Post, 386 F.3d 567, 579 (4th Cir.2004) (citing Rushford v. New Yorker Magazine, 846 F.2d 249, 253 (4th Cir.1988)). Since a motion to conditionally certify a FLSA Collective Action is not a dispositive motion, the court analyzes Scott defendants' motion to seal under the common law standard.

"The distinction between the rights of access afforded by the common law and the First Amendment is 'significant,' because the common law 'does not afford as much substantive protection to the interests of the press and the public as does the First Amendment.'" Va. Dep't of State Police v. Washington Post, 386 F.3d at 579 (quoting Balt. Sun Co. v. Goetz, 886 F.2d 60, 64 (4th Cir.1989); Rushford, 846 F.2d at 253). Specifically, the common law presumes a right to access all judicial records and documents, but this presumption can be rebutted if "the public's right of

26

access is outweighed by competing interests." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984) (citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-608 (1978)).

Here, Scott defendant's motion to seal provides reasonable notice of the request to seal, and the public has had an opportunity to object to the request to seal. See id. Moreover, there is a privacy interest in protecting the compensation information of non-party employees, which outweighs the public's right to a completely unredacted department wage report. Scott defendants have offered, at their own expense, to redact the names of individuals on the documents while leaving other information, including employee identification numbers. (Scott Def. Brief (DE 103) at 9). This is a reasonable alternative to sealing that adequately balances the public's right to access judicial records and the privacy of employees who are not parties to this action. Accordingly, the court permanently seals Scott defendants' proposed sealed exhibit (Proposed Sealed Ex. (DE 101)) and directs Scott defendants to file within 7 days of the date of this order a redacted version of the sealed exhibit, which redacts only the names of employees who are not parties to this action. All other information should remain in the redacted exhibit for the public record.

C.     Motion to Withdraw Ramón Hernandez

Plaintiffs move to "withdraw" plaintiff Ramón Hernandez "as named plaintiff and proposed class representative without prejudice" and "continue as a putative class member should the court grant certification." (Mot. to Withdraw (DE 96)).

"A request for a court order must be made by motion. The motion must: . . . state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7. "The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim." Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001).

It is unclear on the face of plaintiffs' motion under what procedure plaintiffs seek to "withdraw" plaintiff Ramón Hernandez "without prejudice" while preserving his contingent claims in a class action that has not been certified. Plaintiffs' request appears to stem from plaintiff Ramón Hernandez's inability to participate in discovery. (See Mot. to Withdraw (DE 96) ¶¶ 9-10). However, with no class certified, plaintiff Ramón Hernandez's standing in this case depends on him being a named plaintiff in this action. As a plaintiff with claims in this action, plaintiff Ramón Hernandez is responsible for complying with the Federal Rules of Civil Procedure, including rules concerning discovery.

Ordinarily, the court would construe plaintiffs' request as a motion to voluntarily dismiss plaintiff Ramón Hernandez from this action without prejudice, which would enable him later to join the lawsuit as a class member should a class action be certified.[8] See Semteck Int'l Inc., 531 U.S. at 505. Further, it appears from Scott defendants' submission to the court that they would consent to a stipulation of dismissal without prejudice. (Email Correspondence (DE 104-5)). However, plaintiffs' counsel has indicated that they do not seek to dismiss plaintiff Ramón Hernandez's claims. (Email Correspondence (DE 104-5)).

For the reasons stated above, the court denies plaintiffs' motion without prejudice to refiling the motion in a manner that states with particularity the procedural grounds for the relief sought.

D.    Plaintiffs' Objections to the Magistrate Judge's Order

Plaintiffs object to the magistrate judge's order granting Scott defendants' motion to amend their answer.

"A party may serve and file objections to the order within 14 days after being served with

_____

[8]Scott defendants suggest plaintiffs are raising a motion to amend their complaint. The court does not construe the motion as such because of the absence of a proposed amended complaint.

28

a copy [of a magistrate judge's order]." Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Wooden, 887 F.3d 591, 602 (4th Cir. 2018).

District courts should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). But the Fourth Circuit has explained that "after the deadlines provided by a scheduling order have passed, the good cause standard [of Rule 16(b)(4)] must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008). The good cause standard focuses on the diligence of the party seeking the proposed amendment. McMillan v. Cumberland Cty Bd. of Ed., 734 F. App'x 836, 845–46 (4th Cir. 2018). If a moving party can show good cause to amend its pleading past the deadline in the scheduling order, a motion to amend will only be denied if amendment would be prejudicial to the other party, there has been bad faith by the moving party, or amendment would be futile. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (citing Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

Here, the magistrate judge's finding that defendants has good cause under Rule 16(b)(4) is not clearly erroneous. The magistrate judge stated "the court believes that [counsel] has attempted to amend Scott's Second Defense to accurately reflect the law as soon as he was aware of the issue with Scott's Answer." (Order (DE 121) at 7). The magistrate judge bottoms his finding of good cause on Scott defendants' claims of a scrivener error. (Order (DE 121) at 6). Scott defendants' contentions support this finding, on the basis that Scott defendants provided discovery to plaintiffs

29

pertaining to a defense under 29 U.S.C. § 260. (See Order (DE 121) at 7). While the magistrate judge addresses Scott defendants' discovery in terms of prejudice, Scott defendants providing discovery relevant to a 29 U.S.C. § 260 defense also goes to Scott defendants' intent with respect to drafting their pleadings. Providing such discovery is indicative of a scrivener's error as alleged by Scott defendants.

Plaintiffs argue that the magistrate judge erred because Scott defendants were "put on notice of its alleged pleading error and could have made a timely amendment." (Pl. Mem. (DE 127) at 6). However, the magistrate judge considered the discovery conducted by plaintiffs and defendants, and still credited Scott defendants' argument that they made a scrivener's error. (Order (DE 121) at 6-7). Additionally, the docket supports a finding of good cause. Scott defendants filed their answer to plaintiffs' third amended complaint on June 4, 2018. (DE 61). Scott defendants raised the issue with their 29 U.S.C. § 260 defense to plaintiffs on September 19, 2018, with discovery still ongoing[9] and before any dispositive motions had been filed in the case. (DE 91-2); see Nourison Rug Corp., 535 F.3d at 298 (finding no good cause where party did not raise a defense until responding to a motion for summary judgment).

Plaintiffs also argue that Scott defendants were not diligent because they had previously asserted 29 U.S.C. § 260 defense in other cases. The court finds plaintiffs' argument unpersuasive as to the proceedings in this case. Consequently, the court holds that the magistrate judge did not err by finding good cause to allow an amendment.

The court also holds that the magistrate judge's finding of no prejudice was not clearly erroneous. Plaintiffs argue that they have been prejudiced because they are unable to subpoena

---

[9]Indeed, plaintiffs have even more time to conduct discovery, following the court's order dated January 4, 2019, granting the parties' consent motion for extension of the discovery deadline (DE 120).

possible witnesses Scott defendants may choose to use in support of their 29 U.S.C. § 260 defense. However, plaintiffs are not prejudiced because discovery remains to be conducted in this case. The court extended the discovery deadline in this matter to 60 days after the date of this order,[10] and "modif[ied] the other deadlines accordingly." (Order (DE 120)). One such deadline would be the deadline for supplemental disclosures, which must be disclosed 40 days before the close of discovery and "must identify the universe of all witnesses and exhibits that probably or even might be used at trial other than solely for impeachment." (See Case Management Order (DE 47) ¶ I.J.). Plaintiffs are not prejudiced as they will have the opportunity to learn what witnesses and exhibits Scott defendants might seek to use before trial, including evidence from the Department of Labor.

Accordingly, the court overrules plaintiffs' objections and affirms the order of the magistrate judge granting Scott defendants leave to amend their answer.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED as follows:

1.  Plaintiffs' motion for conditional certification (DE 98) of a collective action under FLSA is GRANTED on the terms set forth herein.

2.  The collective action shall include:

    All persons who, during the three year period prior to the date on which such person files a consent to join this action pursuant to 29 U.S.C. § 216(b), and ending with the date final judgment is entered, were not paid the required overtime wage rate when they worked more than 40 hours in any workweek unloading, storing, packing and/or processing sweet potatoes in the storage facilities or packinghouses of the Scott defendants when any part of that work involved sweet potatoes that were and are produced by person(s) or entities other than the Scott defendants.

---

[10]Since the court has set an opt in period of 90 days from the date of final approval of the notice, the parties will have 150 days from the date of final approval of the notice to complete discovery.

3. No subclasses shall be certified, although the parties may raise a motion for certification of subclasses if and when they deem appropriate.

4. Within 14 days of the date of this order, plaintiffs are DIRECTED submit to the court an amended proposed notice which incorporates the changes discussed above, providing both English and Spanish versions of the notice. Defendants will have 7 days to raise any objections to the language of the amended proposed notice. The parties are encouraged to confer and resolve any differences in wording before submission of the amended proposed notice to the court.

5. The opt-in period for this action shall extend to 90 days after the court approves a final version of plaintiffs' proposed notice, and plaintiffs are ALLOWED to provide notice by the methods of distribution discussed above. Defendants are DIRECTED to provide the contact information stated herein for all potential collective action plaintiffs in accordance with this order no later than 14 days after entry of this court's order.

6. Scott defendants' motion to seal proposed exhibit (DE 102) is GRANTED. Scott defendants are to file within 7 days a redacted version of the sealed exhibit, which redacts only the names of employees who are not parties to this action. All other information should remain in the redacted exhibit for the public record.

7. Plaintiffs' motion to withdraw Ramón Hernandez as a named plaintiff and class representative (DE 96) is DENIED WITHOUT PREJUDICE to refiling the motion in a manner that states with particularity the procedural grounds for the relief sought.

8. Plaintiffs' objection to the magistrate judge's order granted Scott defendants' motion to amend their answer (DE 127) is OVERRULED, and the magistrate judge's order

32

granted Scott defendant's leave to amend is AFFIRMED.

SO ORDERED, this the 7th day of February, 2019.


LOUISE W. FLANAGAN
United States District Judge